## A93A1976. HEARST v. THE STATE.
### (441 SE2d 914)

ANDREWS, Judge.

Hearst appeals from the denial of his motion for new trial after his conviction of three counts each of armed robbery and burglary, two counts of aggravated assault, and one count each of aggravated sodomy and rape.

1. Viewed in favor of the verdict, the evidence showed three incidents involving young women in their apartments.

On March 23, 1991, D. M. was staying with a friend at Post Bridge Apartments on Terrell Mill Road. The apartment was on the ground floor. She was asleep on the living room couch around 4:00 a.m. when she heard a noise in the bedroom. Thinking her friend was home, she looked into the bedroom and saw a figure climbing in the window. There was a lamp on in the bedroom. The man had on a baseball cap and, when he saw her, he ducked his head and pulled the cap down over his face. He was carrying a gun and pointed it at her. He grabbed her, made her turn the lamp off and told her to give him all her money. He also made her go through a jewelry box in the bedroom and would not touch anything in the apartment. She gave him the one dollar she had. The hat he was wearing had "Miami University" on it. She advised him her friend would be there soon and he told her he was going to perform an act of sodomy on her and then he would leave. She refused to perform another act requested by him and he got up, put on a condom, and raped her. He then forced her into the kitchen and made her get out a bottle of vodka. She managed to grab a blanket off of the couch and ran out the door of the apartment.

D. M. described the assailant to police as tall, in his early twenties, with a thin moustache and wearing the Miami hat. She identified Hearst from a photographic array before trial and also in person at trial.

On March 30, 1991, J. Y. and her sister M. K. were living at the Laurel Valley Apartments on Terrell Mill Road. J. Y. had just arrived

home from work after midnight. A man came in through the sliding glass door, which J. Y. was facing. M. K. was standing with her back to the door and the man grabbed M. K. around the neck and stuck a gun in her stomach. He was wearing a baseball cap which he pulled down to hide his features. He then said "Where's the money? I need money." J. Y. gave him $1,800 in cash. She told him her uncle was coming over. He made her unplug the telephone and locked the two women in the bedroom.

J. Y. identified Hearst from a photo spread before trial. She also identified him at trial.

On June 19, 1991, C. B. had returned home to her Windcliff Apartment on Terrell Mill Road after getting off work at 11:00 p.m. She had checked in with a friend about 11:35 p.m. and was on her bedroom phone talking to another friend when she noticed someone coming around the corner with a baseball hat on and a knife in his hand. The man told her to get off the phone and asked her if she had any money around anywhere. There was a lamp on in the room and she saw his face. He knocked over the lamp and was dragging her to the living room where her purse was located. During the struggle, he cut her on the hand.

As he was dragging her to the living room, she managed to jerk free and ran back into the bedroom and locked herself in. She called the police. She described the assailant as wearing a dark shirt with writing on the front, a blue hat pulled low over his eyes, and jeans. She also described a thin moustache.

Officer Northern was in the area on another call and saw a man fitting the description fleeing from the apartments. He chased him on foot but lost him. Officer Yancey and the canine unit were called to track the man and a perimeter of officers was set up around the apartments. The dog picked up the scent where the man was last seen and tracked it toward Terrell Mill Road. As Officer Yancey and the dog proceeded down Terrell Mill Road, Hearst emerged from a wooded area onto the road. The dog was heading for him. Hearst was wearing a blue tee-shirt, blue athletic shorts, and he had a thin moustache. He was sweating and had mud on his shoes and elbows.

Hearst told the officers he had been drinking with friends at the Laurel Valley Apartments pool. He was placed in a patrol car and taken to C. B.'s apartment. As he was sitting in the back seat, he told the officers he wanted her to see him so she could tell them he was not the guy. He leaned up near the window. C. B. identified him as the assailant. Officers conducting the investigation discovered pry marks on the sliding glass door of C. B.'s ground floor apartment. The grass was damp with dew and officers found one set of footprints coming from a knoll nearby onto the terrace and another set leaving it.

Although the dog continued to search the area, no hat or blue

jeans were discovered in the area. A green Miami University baseball cap and two green tee-shirts were recovered from Hearst's apartment.

There was evidence sufficient to convince any rational trier of fact of the existence of the essential elements of the crimes charged. *Jackson v. Virginia*, 443 U. S. 307, 310 (99 SC 2781, 61 LE2d 560) (1979); *Baldwin v. State*, 153 Ga. App. 35, 37 (264 SE2d 528) (1980).

2. The first four enumerations deal with alleged ineffective assistance of counsel and will be addressed together.

(a) Appellate counsel was not trial counsel, but was appointed by the court before the hearing on the motion for new trial. The motion was amended to address claims of ineffective assistance and these were fully addressed at that hearing.

Here, the notice of appeal was filed one day before the filing of the court's order denying the motion for new trial. Such a premature notice of appeal ripens upon the filing of the order and there is no jurisdictional impediment to our review. *Hope v. State*, 193 Ga. App. 202, 203 (1a) (387 SE2d 414) (1989).

(b) The allegations of ineffective assistance are that trial counsel failed to file a motion to suppress, did not subpoena witnesses for Hearst, allowed Hearst's character to be put into evidence without objection, and did not object to the "expert testimony" of the officer working the police dog.

"A trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous. [Cit.]" *Garrett v. State*, 196 Ga. App. 872, 874 (1) (397 SE2d 205) (1990). A conviction will not be reversed on the basis of ineffective assistance of counsel unless " 'counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " *Carter v. State*, 176 Ga. App. 632, 633 (337 SE2d 413) (1985), quoting from *Strickland v. Washington*, 466 U. S. 668, 669 (104 SC 2052, 80 LE2d 674) (1984). See *United States v. Cronic*, 466 U. S. 648 (104 SC 2039, 80 LE2d 657) (1984).

"In order to prevail defendant must meet two tests: 1) he must show that trial counsel's performance was deficient in that he made errors so serious that he was not functioning as the 'counsel' guaranteed defendant by the Sixth Amendment; 2) defendant must show that the defense was prejudiced by the deficient performance so that defendant was deprived of a fair trial, one whose results were reliable. [Cit.]" *Hosch v. State*, 185 Ga. App. 71, 72 (2) (363 SE2d 258) (1987).

(1) The only items subject to suppression as a result of the search of Hearst's and his common-law wife's apartment were a green Miami University baseball hat and two green shirts. A search warrant had been obtained. While trial counsel, in the heat of trial, initially said he was surprised by the fact that there had been a search, he later

recalled that the wife had told him about the search the previous weekend. In any event, a motion to suppress "items found during the search" was filed during the trial, but counsel opted not to pursue it.

As trial counsel testified at the motion for new trial hearing, the hat found was a different color from that described by the witnesses and his examination of the witnesses fully explored this.

Also, Hearst testified at the trial and numerous witnesses were presented to support his alibi defense. He contended he was elsewhere during the first two incidents. As to the incident when he was apprehended, Hearst acknowledged that he was in the Laurel Valley Apartment complex that evening. He was with two other men, one he knew as "John-John" (JJ) and the other a friend of JJ. He had gone to high school with JJ and had run into him earlier that day, although he could not remember his last name. They had played basketball and "hung out" before coming to the apartment complex after 11:00 p.m. and meeting the third man. They had drunk beer and smoked marijuana and continued to do so by the swimming pool. JJ offered to "lace up" a marijuana joint with cocaine, which made Hearst nervous because he did not do cocaine.

They saw numerous police vehicles in the area and one drove by and saw them but did not stop. JJ and the other man went to buy more beer, but Hearst refused to go because of the cocaine. He remained by the pool, but became more nervous because of his possession of the joints which he threw away. Because he had left his regular cigarettes in JJ's car, he started walking toward a local store to buy some more. That is when he encountered the officers and the dog and was taken to see C. B.

Therefore, the decision to forego the motion to suppress in these circumstances did not amount to ineffective assistance.

(2) Trial counsel's failure to have three police officers under subpoena to testify is claimed to show counsel was constitutionally ineffective. The officers had been on the State's witness list, but had been released by the State at the close of its case. Defense counsel did attempt to serve subpoenas on the officers, but was unable to locate them during the trial.

Even assuming this shows a "deficiency," however, Hearst has been unable to show that their absence so prejudiced him that he was deprived of a fair trial. The only intended purpose for their testimony, according to trial counsel, was to show some minor discrepancies in the location of the police dog and Hearst when he was located. Further, they would state he cooperated and did not attempt to flee. This same testimony was presented by other officers also present at the scene. There was no harm. *Smith v. State*, 207 Ga. App. 290, 292 (428 SE2d 95) (1993).

(3) Officer Harris was called as a witness during Hearst's case to

show that he cooperated with the police. While cross-examining the officer, the prosecutor asked "after the defendant made the statement that he was drinking and smoking marijuana over at the . . ." At this point, there was no evidence before the jury of marijuana use, although the hearing required by *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), had been conducted. Trial counsel objected, the court sustained the objection, instructed the jury to disregard that question and admonished the prosecutor before the jury. The motion for mistrial made and preserved by trial counsel on the ground the state had improperly introduced Hearst's character was denied.

Considering the corrective action taken by the court, there was no error in denying the motion for mistrial, as alleged in the fifth enumeration. *Ward v. State*, 252 Ga. 85 (311 SE2d 449) (1984).

(4) The next allegation of ineffectiveness also relates to Hearst's statement to the police and at trial that he and JJ were drinking beer and smoking marijuana.

It is contended here that, after Hearst's statement to the police was found voluntary and properly presented to the jury, trial counsel should have again objected that the statement placed his client's character in issue. As stated in *Jones v. State*, 257 Ga. 753, 759 (a, b) (363 SE2d 529) (1988), the mere admission that one has used marijuana or drunk alcohol does not place one's character in issue. See *O'Neal v. Kammin*, 263 Ga. 218, 219 (430 SE2d 586) (1993).

Further, statements made by an accused at the time of arrest are admissible as part of the res gestae. *Bixby v. State*, 234 Ga. 812, 813 (1) (218 SE2d 609) (1975); *Turner v. State*, 178 Ga. App. 274 (3) (342 SE2d 759) (1986).

That appellate counsel may, in hindsight, disagree with the tactics and strategy of trial counsel does not equate with a showing of ineffectiveness, *Hosch*, supra, and new counsel has failed to show ineffectiveness. *Smith*, supra.

(5) Since Officer Yancey was never tendered to the court as an expert and was not so designated by the court, the fourth enumeration of error is without merit.

3. Finally, it is urged that the trial court's denial of another motion for mistrial made during cross-examination of Hearst was reversible error.

The State had asked Hearst the whereabouts of John-John and Hearst had indicated he might be in California. Later, during cross-examination, the State asked "Q. Isn't it true, Mr. Hearst, that the reason John-John isn't here is because he knows that you committed an armed robbery and he's not willing to come in here and perjure himself?" Trial counsel immediately made and later preserved his motion for mistrial on the ground that this question implied to the

jury that the defense had some obligation or burden of proof in the case.

Again, the court denied the mistrial, but agreed with trial counsel and immediately instructed the jury that the State always bore the burden of proof and there was no burden upon an accused.

On cross-examination, the prosecutor is entitled to ask defendant why a witness has not been called. *Worth v. State*, 183 Ga. App. 68, 72 (5) (358 SE2d 251) (1987). Therefore, this enumeration presents no ground for reversal.

*Judgment affirmed. Pope, C. J., and Birdsong, P. J., concur.*

DECIDED MARCH 17, 1994.

*Howard & Delaney, Stephen A. Delaney*, for appellant.

*Thomas J. Charron, District Attorney, Don T. Phillips, Nancy I. Jordan, Debra H. Bernes, Assistant District Attorneys*, for appellee.

