## S96A0585. ORTIZ v. THE STATE.
(470 SE2d 874)

BENHAM, Chief Justice.

Robert Ortiz was convicted of rape, aggravated sodomy, and burglary, and was sentenced to life imprisonment without possibility of parole under OCGA § 17-10-7 (b), and to a consecutive sentence of 20 years imprisonment. This Court has jurisdiction over this appeal because the issue of the constitutionality of OCGA § 17-10-7 (b) was properly raised and ruled on by the trial court.

1. Ortiz contends that the trial court erred in denying his motion to suppress evidence obtained as a result of his arrest on an unrelated peeping tom charge. Until he was suspected of rape, the peeping tom case remained closed because the victim did not want to press charges. Ortiz argues that the peeping tom arrest was merely a pretext for gathering evidence to establish probable cause to arrest him for the rape.

At the hearing on the motion to suppress, the detective who obtained the arrest warrant denied that the peeping tom case would not have been reopened had it not been for the rape incident. However, he further testified that, but for the rape, he would not have known anything about the peeping tom incident. The trial court found that the State had probable cause to arrest Ortiz on the peeping tom charge. However, the court concluded that the detective probably would not have arrested Ortiz on that charge except for his suspicion that Ortiz might be involved in the rape case. After initially withholding a ruling on the issue, the trial court concluded that the arrest of Ortiz was valid.

---

swered one of those questions and allegedly improperly placed his character into issue; and that the state violated his rights under *Brady v. Maryland,* 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), in several respects.

The present case is indistinguishable in principle from *Hunter v. State*, 190 Ga. App. 24 (2) (378 SE2d 352) (1989), and *Taylor v. State*, 181 Ga. App. 703 (353 SE2d 619) (1987). The arrest here was not rendered pretextual merely because the alleged victim declined to sign an affidavit seeking issuance of a warrant. *Patterson v. State*, 210 Ga. App. 735 (1) (437 SE2d 602) (1993). Under the particular facts of this case, the trial court did not err in admitting the evidence discovered as a consequence of the arrest for peeping tom.

2. Ortiz contends that OCGA § 17-10-7 (b) is unconstitutional on the ground that it constitutes cruel and unusual punishment under the federal and state constitutions, as well as a violation of his due process and equal protection rights.

OCGA § 17-10-7 (b) (2) provides that any person who is convicted of a "serious violent felony" and subsequently commits and is convicted of a second "serious violent felony" shall be sentenced to life imprisonment without parole or any other sentence-reducing measures. Serious violent felonies are defined as murder, felony murder, armed robbery, kidnapping, rape, aggravated child molestation, aggravated sodomy, and aggravated sexual battery. OCGA §§ 17-10-6.1 (a); 17-10-7 (b) (1).

(a) This Court has followed *Harmelin v. Michigan*, 501 U. S. 957 (111 SC 2680, 115 LE2d 836) (1991), holding that the choice of sentence by the legislature "is insulated from judicial review unless it is wholly irrational or so grossly disproportionate to the severity of the crime that it constitutes cruel and unusual punishment. [Cits.]" *Isom v. State*, 261 Ga. 596, 597 (1) (408 SE2d 701) (1991).

> [T]he point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction.

*Rummel v. Estelle*, 445 U. S. 263, 285 (III) (100 SC 1133, 63 LE2d 382) (1980); *Grant v. State*, 258 Ga. 299, 300 (2) (368 SE2d 737) (1988). In *Rummel*, the Supreme Court of the United States held that a recidivist statute providing a life sentence for a third felony conviction did not violate the Eighth Amendment proscription against cruel and unusual punishment.

Furthermore, a sentence which is not otherwise cruel and unusual does not become so simply because it is "mandatory." *Harmelin v. Michigan*, supra at 995 (IV). Unlike the decision to impose the death penalty, a determination that a defendant should be sentenced to life imprisonment without possibility of parole does not require a consideration of mitigating factors. *Harmelin*, supra at 995-996 (IV). See

also *Knight v. State*, 243 Ga. 770, 772 (1) (257 SE2d 182) (1979).

We conclude, therefore, that OCGA § 17-10-7 (b) does not constitute cruel and unusual punishment under the federal constitution. The reasons for so holding apply with equal force to the attack based on the state constitution. *Stephens v. State*, 261 Ga. 467, 468 (5) (405 SE2d 483) (1991). The trial court was correct in rejecting Ortiz's constitutional arguments.

(b) This Court has held that the goal of deterring repeat drug sales by the same person is a rational basis for mandatory life imprisonment for a second sale of a controlled substance or possession thereof with intent to distribute. *Stephens v. State*, 265 Ga. 356, 359 (4) (456 SE2d 560) (1995); *Tillman v. State*, 260 Ga. 801 (400 SE2d 632) (1991). Similarly, seeking to deter repeat "serious violent felonies" by the same person is a rational basis for mandatory life imprisonment without possibility of parole. Furthermore, contrary to Ortiz's argument, "[d]ue process does not require individualized sentencing. [Cits.]" *Isom v. State*, supra at 597 (1). Therefore, the mandatory sentence of life imprisonment required by OCGA § 17-10-7 (b) does not unconstitutionally deprive defendants of due process. See *Tillman*, supra at 802.

(c) Ortiz "does not assert that the mandatory sentence statute was selectively enforced against him for some discriminatory or improper reason." *Isom v. State*, supra at 597 (1). Contrary to Ortiz's argument, those prosecuted under the death penalty statutes are not similarly situated, as there is a qualitative difference between death and all other penalties. *Harmelin*, supra at 995 (IV). Therefore, we find no violation of the right to equal protection.

Accordingly, we find no merit in Ortiz's constitutional challenge to OCGA § 17-10-7 (b). See *Knight v. State*, supra (wherein this Court rejected a constitutional challenge, on the same grounds as in the instant case, to a mandatory maximum sentence for second felonies).

*Judgments affirmed. All the Justices concur, except Sears, J., who dissents.*

SEARS, Justice, dissenting.

I respectfully dissent. It is established that if a reasonable police officer would not make an arrest for a crime absent an intent to gather evidence of a different crime, then any evidence gathered as a result of the arrest must be suppressed. In this case, the trial court made a finding of fact that the police would not have arrested Ortiz on the peeping tom charge but for the purpose of gathering evidence to be used against him on the rape charge. Consequently, I believe that unless the trial court's finding of fact was clearly erroneous, this Court must reverse the trial court's denial of Ortiz's motion to sup-

press.

The facts of record show that on April 23, 1995, Ortiz's former roommate, Ms. Michelle Stanley, received a telephone call from her next-door neighbor, Mr. Scott Seigler, who informed her that Ortiz was outside of her apartment, peeping into it. Ms. Stanley looked outside, and saw Ortiz hiding behind some bushes near her apartment. She then called the police, who came to her apartment and spoke with both her and Mr. Seigler. Both Ms. Stanley and Mr. Seigler told the police that they knew Ortiz, and they both identified Ortiz as the peeping tom. In addition, Ms. Stanley told the police about the voyeuristic and bizarre behavior that Ortiz had engaged in while they were roommates. When asked whether she would swear out a warrant against Ortiz, Ms. Stanley asked police whether Ortiz had a history of peeping tom. If so, she testified, she would have sworn out the warrant; otherwise, she preferred not to get involved.

Despite having two eyewitnesses to the peeping tom incident, the police did not press charges against Ortiz. Two weeks after the peeping tom was reported to police, a rape occurred at Ms. Stanley's apartment complex. The officer who had taken the peeping tom report sought out and spoke with the detective investigating the rape, and told him that Ortiz had been identified as a peeping tom at the complex. The officers investigating the rape then spoke with Ms. Stanley, and she confirmed the information she and Mr. Seigler had reported at the time of the peeping tom incident. Again, Ms. Stanley was reluctant to press charges against Ortiz for peeping tom.

Based upon the information gathered on the peeping tom incident, the detective obtained a warrant for Ortiz's arrest on a charge of peeping tom. However, upon being arrested pursuant to that warrant, Ortiz was booked on charges of peeping tom, rape, and burglary. After he was booked, samples of Ortiz's blood, saliva, and hair were taken by the police — hardly standard treatment for a suspected peeping tom. At this same time, the police took a photograph of Ortiz to be used in a photographic line-up, and also photographed Ortiz's naked torso. The photographic line-up including Ortiz's photo then was taken to the rape victim, who identified Ortiz as her assailant. At this same time, the victim indicated on a diagram the location of a mole she had felt on her assailant's back, and it matched the photograph of Ortiz's naked back.

It was then that warrants were obtained to arrest Ortiz on rape and burglary, and to search his residence. That search uncovered underwear that resembled a pair that the rape victim had identified as having been taken from her by her assailant, which were later determined to contain fibers consistent with the carpeting of the apartment where the rape occurred. Also obtained at Ortiz's residence were provocative photos of Ms. Stanley that had been taken from her bed-

room. The photographic line-up including Ortiz's photo, the provocative photos of Ms. Stanley, and the panties obtained from Ortiz's residence all were introduced into evidence at trial.

At the hearing on Ortiz's motion to suppress, the detective who arrested Ortiz on the rape charge testified that had it not been for the fact that Ortiz was a suspect in the rape case, he would not have been arrested on the peeping tom charge. The trial court found as a matter of fact that except for the rape case, the peeping tom charge would not have been pursued. The trial court also found that when he arrested Ortiz on the peeping tom charge, the arresting officer's primary motivation was to investigate the rape charges.

The majority affirms the trial court's denial of the motion to suppress by relying upon case law that concerns challenges to searches made incident to arrests based upon probable cause.[1] The majority appears to reason that so long as the arrest of Ortiz for peeping tom was based upon probable cause, he could be arrested on that charge, irrespective of whether the arrest was motivated by a subjective intent to gather evidence to support a charge of rape. I respectfully submit that this case law relied upon by the majority is highly distinguishable from this matter, and that other case law relied upon by this Court contradicts the majority's holding.

1. Despite the majority's assertion to the contrary, the case law it relies upon is highly distinguishable from this matter. *Hunter* and *Taylor*, supra, both addressed motions to suppress evidence gathered from searches made incident to arrests. In each of those cases, the Court of Appeals reasoned that because the initial arrests were based upon probable cause, and therefore were valid, any evidence gathered as a result of searches made incident to those arrests was not subject to suppression.[2] Of course, in this case, the evidence that was sought to be suppressed was not gathered as the result of a search incident to Ortiz's arrest for peeping tom. Furthermore, neither *Hunter* nor *Taylor* involved express findings by a trial court that an arrest was motivated by an intent to gather evidence of a wholly separate crime. Hence, the majority's reliance upon *Hunter* and *Taylor* is misplaced.

2. *United States v. Smith*[3] establishes that when the evidence, viewed objectively, shows that an arrest was made for a crime not in order to pursue charges on that crime, but rather in order to investigate a wholly separate crime, the arrest is impermissibly pretextual.[4]

---

[1] *Hunter v. State*, 190 Ga. App. 24 (378 SE2d 352) (1989); *Taylor v. State*, 181 Ga. App. 703 (353 SE2d 619) (1987).

[2] 190 Ga. App. at 25; 181 Ga. App. at 704.

[3] 799 F2d 704 (11th Cir. 1986), cited with approval in *Tate v. State*, 264 Ga. 53, 57 (440 SE2d 646) (1994).

[4] See *Smith*, 799 F2d at 710-711. The actual issue in *Smith* concerned the pretextual bases for an investigatory stop based upon reasonable suspicion. However, I believe that this

Any evidence obtained as result of such a pretextual arrest must be suppressed as fruit of an illegal seizure.[5]

*Smith* also establishes that the inquiry engaged in by the majority — whether or not the arrest on the peeping tom charge can be justified as based upon probable cause — is not determinative of whether the seizure was impermissibly pretextual. In fact, as explained below, the *Smith* opinion states that even if the officer was acting upon probable cause, the seizure nonetheless may have been pretextual and therefore invalid.

In determining whether a seizure made by the police is invalid as pretextual, the proper inquiry is not whether the police officer *could* have made the seizure, but rather whether under the same circumstances a reasonable officer *would* have made the seizure in the absence of an illegitimate motive to obtain evidence of a different crime.[6] Thus, under *Smith*, the relevant inquiry in this case is not whether the arrest of Ortiz for peeping tom could have been made because there was probable cause, but rather whether an objectively reasonable officer would have made the arrest absent an improper motive to gather evidence of the rape charge.

It is obvious that there was probable cause to arrest Ortiz for peeping tom. However, there can be no dispute that a reasonable officer would not have arrested Ortiz for peeping tom absent an improper intent to gather evidence on the rape. The evidence of record shows that for the two weeks preceding the rape, the police knew that Ortiz had been identified by two separate witnesses as the peeping tom, yet no arrest was made. The trial court made an explicit finding of fact that Ortiz would not have been arrested on the peeping tom charge absent the arresting officer's intention to gather evidence on the rape. As found by the trial court, it was only when Ortiz became a suspect in the rape case that he was arrested for peeping tom, and that arrest was made for the purpose of gathering evidence on the rape charge. Hence, unless the trial court's finding of fact was clearly erroneous, which it was not, there can be no dispute that Ortiz's arrest for peeping tom was impermissibly pretextual, and the trial court erred in denying the motion to suppress.

3. The error resulting from the trial court's denial of Ortiz's motion to suppress cannot be considered harmless. Evidence obtained as a result of a pretextual arrest must be suppressed.[7] The pretextual arrest in this case resulted in the State's obtaining of photographs of

issue is sufficiently analogous for Fourth Amendment purposes to provide controlling precedent in cases such as this one, dealing with pretextual arrests.

[5] Id.; see *United States v. Cruz*, 581 F2d 535, 542 (5th Cir. 1978).

[6] *Smith*, 799 F2d at 709; see *Cruz*, 581 F2d 541-542.

[7] Id.

Ortiz which enabled the State to identify him as the rapist. The warrant to search Ortiz's residence also flowed directly from the pretextual arrest, meaning that the panties and the photos of Ms. Stanley also were tainted evidence. In light of the fact that all of this evidence should have been suppressed, it cannot be said beyond a reasonable doubt that but for the trial court's error, the jury's verdict would have been no different.[8] Hence, I believe that this Court should reverse Ortiz's conviction and order a new trial.

DECIDED JUNE 3, 1996.

*Devon A. Orland*, for appellant.
*J. Tom Morgan, District Attorney, Jeffrey H. Brickman, Desiree S. Peagler, Assistant District Attorneys*, for appellee.

---

[8] *Gavin v. Vasquez*, 261 Ga. 568, 570 (407 SE2d 756) (1991).