569 S.E.2d 325

The STATE, Respondent,

v.

James R. STANDARD, Appellant.

No. 25514.

Supreme Court of South Carolina.

Heard June 26, 2002.
Decided Aug. 12, 2002.

Katherine Carruth Link; and South Carolina Office of Appellate Defense, both of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson and Assistant Attorney General Melody J. Brown, all of Columbia; and Solicitor Druanne D. White, of Anderson, for respondent.

Justice WALLER.

Appellant, James R. Standard, was convicted of burglary in the first degree and grand larceny. Based upon a prior armed robbery conviction, he was sentenced to life imprisonment without parole (LWOP) pursuant to S.C.Code Ann. § 17–25–45 (2001), the Two–Strikes law.

## FACTS

On July 5, 1995, approximately two months prior to his sixteenth birthday,[1] Standard committed an armed robbery. He was waived up to general sessions court where he pled guilty to armed robbery on October 17, 1996 (at age 17); he was given a youthful offender sentence not to exceed six years.[2]

Shortly after his release on the armed robbery charge, Standard and two co-defendants broke into a mobile home in Anderson County on October 9, 1999; they vandalized the residence and stole cash, jewelry and miscellaneous items valued at over $1000.00.[3] The victim testified that her home was completely destroyed, and that her dog was beaten so severely it had to be put to sleep; her son's cat was also killed. The jury convicted Standard of burglary in the first degree and grand larceny. Based upon his prior "most serious" armed robbery conviction, the trial court sentenced him to LWOP for burglary under the Two–Strikes law.

## ISSUE

Is Standard's sentence of LWOP for burglary unconstitutional?

## DISCUSSION

Under the Two–Strikes Law, S.C.Code Ann. § 17–25–45(A)(1), upon conviction of a most serious offense, a person must be sentenced to a term of imprisonment for life without the possibility of parole if that person has one or more prior convictions for a most serious offense. Armed robbery and first degree burglary are most serious offenses. S.C.Code Ann. § 17–25–45(C)(1).

---

1. Standard was born on September 3, 1979.

2. One of his cohorts during the 1995 robbery was Jeremy Jones, who was 14 years old at the time. Unlike Standard, Jones' case was handled as a juvenile adjudication in family court.

3. Standard and his cohorts committed three other burglaries the same evening in Pickens county, to which Standard pled guilty prior to this case. These burglaries were not used to enhance Standard's present sentence.

Standard contends the Two–Strikes Law is unconstitutional as applied to him in that it a) violates the separation of powers doctrine by depriving the judicial branch of discretion to consider mitigating circumstances, b) violates due process because the triggering offense of armed robbery was committed when he was 15 years old and his plea was entered (at age 17) without any understanding of the consequences, and c) amounts to cruel and unusual punishment under the circumstances of this case.

■ We recently rejected Standard's separation of powers argument in *State v. Jones,* 344 S.C. 48, 56, 543 S.E.2d 541, 545 (2001), stating:

> Initially, this Court held in *State v. Burdette,* 335 S.C. 34, 515 S.E.2d 525 (1999), that Section 17–25–45 does not violate the separation of powers doctrine. We stated, "[u]nder the mandatory sentencing guidelines, the prosecutor can still choose not to pursue the triggering offenses or to plea the charges down to non-triggering offenses. Choosing which crime to charge a defendant with is the essence of prosecutorial discretion, not choosing which sentence the court shall impose upon conviction." 335 S.C. at 40–41, 515 S.E.2d at 528–529. Further, we found the matter of sentencing if convicted of a triggering offense to be a matter within the province of the legislature.

Standard asserts *Jones* and *Burdette* addressed the separation of powers issue only in the context of whether the Two–Strikes law intrudes upon the **prosecutorial** function, but that the Court has not addressed whether it intrudes upon **judicial** discretion to impose a certain sentence. Contrary to Standard's contention, we stated in *State v. De La Cruz,* 302 S.C. 13, 15, 393 S.E.2d 184, 186 (1990):

> If a defendant is convicted of one of the triggering offenses, the matter of sentencing becomes the province of the legislature. We have held in the past that the penalty assessed for a particular offense is, except in the rarest of cases, purely a matter of legislative prerogative, and the legislature's judgment will not be disturbed.

The *De La Cruz* Court specifically rejected the claim that "the mandatory sentence set forth by the legislature impermissibly intrudes into inherent judicial powers in that all judicial

discretion in sentencing is removed." *Id.*[4] We find *De La Cruz* dispositive of Standard's claim regarding to judicial discretion.[5]

Standard next asserts a sentence of LWOP in this case constitutes cruel and unusual punishment because he was only 15 years old at the time he committed the triggering offense (armed robbery), and the Two–Strikes law permits no consideration of the individual facts of his case. We specifically rejected a "cruel and unusual punishment" challenge to the Two–Strikes law in *State v. Jones, supra.* However, we have not had occasion to address whether a LWOP sentence is cruel and unusual if the triggering offense was committed at the time the defendant was a juvenile.

Recently, in *State v. Ellis,* 345 S.C. 175, 547 S.E.2d 490 (2001), we held a juvenile adjudication is not a conviction, guilty plea, or plea of nolo contendere, such that it may not be used to invoke the mandatory LWOP provisions of the recidivist statute.[6] Unlike *Ellis,* however, Standard here was tried and adjudicated as an adult, such that his guilty plea to armed robbery in general sessions court is a conviction for purposes of sentencing under S.C.Code Ann. § 17–25–45(C)(3)(defining a conviction as any conviction, guilty plea, or plea of nolo contendere).[7]

---

4. *De La Cruz* involved S.C.Code Ann. § 44–53–370(e)(2)(c), which provides a mandatory term of imprisonment of twenty-five years, no part of which may be suspended nor probation granted, for trafficking between one hundred grams to two hundred grams of cocaine.

5. Moreover, the United States Supreme Court has rejected the argument that mandatory penalties, including life imprisonment without parole (excepting capital punishment), are unconstitutional just because they prevent the consideration of mitigating factors. *See Harmelin v. Michigan,* 501 U.S. 957, 994–96, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991).

6. The Court noted that S.C.Code Ann. § 20–7–7805(C) (Supp.2000) (the Children's Code) specifically provides "[n]o adjudication by the [family] court of the status of a child is a conviction." 345 S.C. at 180, 547 S.E.2d at 492.

7. This is the distinguishing factor between Standard's sentence, and that of his cohort, Jones, who had a juvenile adjudication as the result of the armed robbery committed in 1995. Jones was also a participant in the 1999 burglary. As Jones had only a juvenile adjudication, and no

■  The question remains, however, whether it is cruel and unusual to sentence a defendant to LWOP utilizing enhanced penalties for a burglary committed when he was 15 years old.[8] We find it is not.

In *Thompson v. Oklahoma*, 487 U.S. 815, 834, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988), the United States Supreme Court addressed whether it was cruel and unusual punishment to sentence a defendant to **death** for a murder committed when he was 15 years old.  The Court found imposition of a death sentence on one who committed a crime at the age of 15 would not serve the goals or deterrence or retribution inasmuch as a juvenile is less culpable, has more capacity for growth, and is not likely to have performed a cost-benefit analysis as to the consequences of his conduct.  *Id.* at 836–37, 108 S.Ct. 2687, 101 L.Ed.2d 702.  However, the Court's opinion in *Thompson* was premised upon the fact that the great majority of jurisdictions imposing capital punishment have statutory schemes under which defendants may not be executed for crimes committed prior to age 16.  The Court noted that the authors of the Eighth Amendment did not attempt to define the contours of cruel and unusual punishment but, instead, left it to generations of judges to be guided by "evolving standards of decency that mark the progress of a maturing society."  *Thompson*, 487 U.S. at 821, 108 S.Ct. 2687, 101 L.Ed.2d 702 *citing Trop v. Dulles*, 356 U.S. 86, 78

---

prior conviction, he received a fifteen year sentence for the current burglary.  There is no indication in the record before us as to the precise reasons Standard was tried as an adult in general sessions court for that offense.  However, S.C.Code Ann. § 20–7–7605(5) (Supp.2001) provides that a family court having jurisdiction of a 14 or 15 year old juvenile who commits certain offenses may, "after full investigation and hearing, ... determine it contrary to the best interest of the child or of the public to retain jurisdiction.  The court ... may bind over the child for proper criminal proceedings to a court which would have trial jurisdiction of the offenses if committed by an adult."  Accordingly, nothing contrary appearing in the record before us, we must assume the family court in the armed robbery matter conducted an investigation and determined Standard's case was proper for waiver to general sessions court.

**8.**  It is clear that LWOP for burglary is not, in itself, cruel and unusual.  *See State v. White*, 349 S.C. 33, 562 S.E.2d 305 (2002) (holding life sentence without parole for first-degree burglary is not cruel and unusual punishment).

S.Ct. 590, 2 L.Ed.2d 630 (1958). Further, as noted by Justice O'Connor in her concurrence, "[u]nder the Eighth Amendment, the death penalty has been treated differently than other punishments." 487 U.S. at 856, 108 S.Ct. 2687, 101 L.Ed.2d 702.[9]

■ Based upon sentences imposed in other cases, we find lengthy sentences or sentences of life without parole imposed upon juveniles do not violate contemporary standards of decency so as to constitute cruel and unusual punishment. *See Hawkins v. Hargett,* 200 F.3d 1279 (10th Cir.1999), *cert. denied* 531 U.S. 830, 121 S.Ct. 83, 148 L.Ed.2d 45 (2000) (sentence of 100 years without parole for 13 year old defendant convicted of burglary, sodomy, rape, and robbery with a dangerous weapon); *Harris v. Wright,* 93 F.3d 581 (9th Cir. 1996) (15 year old defendant sentenced to life imprisonment without parole for murder); *State v. Ira,* 132 N.M. 8, 43 P.3d 359 (2002) (sentence of 91 & 1/2 years imposed where defendant, at ages 14–15, committed 10 counts of criminal sexual assault against his step-sister); *State v. Green,* 348 N.C. 588, 502 S.E.2d 819 (1998), *cert. denied,* 525 U.S. 1111, 119 S.Ct. 883, 142 L.Ed.2d 783 (1999) (mandatory life sentence imposed on 13 year old who committed first-degree criminal sexual conduct); *State v. Taylor,* 1996 WL 580997 (Tenn.Crim.App. 1996) (sentence of life without parole plus 60 years imposed on juvenile defendant who, at age 16, committed kidnapping, aggravated robbery, aggravated sexual battery, and felony murder); *State v. Pilcher,* 655 So.2d 636 (La.App.1995) (life without parole imposed on 15–year old defendant charged with two counts of murder).

As the Tenth Circuit recently observed in *Hawkins,* 200 F.3d at 1285,

Moreover, there is apparently no societal consensus that a long sentence imposed on a defendant for serious crimes he committed at age thirteen offends evolving standards of

---

9. The United States Supreme Court's recent opinion in *Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (holding execution of mentally ill defendants violates the Eighth Amendment), supports this analysis. Although the test remains whether "evolving standards of decency" prohibit a certain punishment, *Atkins* does not alter our holding with regard to the life sentence without parole imposed in this case.

decency. The North Carolina Supreme Court recently found that nineteen states allow adult penalties for thirteen-year-olds convicted of serious crimes. . . . The court determined that the growing minority of states permitting such punishment is evidence of changing public sentiment toward modern society's violent youthful offenders, and that "sentencing a thirteen-year-old defendant to mandatory life imprisonment . . . is within the bounds of society's current and evolving standards of decency." *Id.* Thus, modern society apparently condones the severe punishment of individuals who commit serious crimes at young ages. We therefore cannot say that a punishment of a term of years for a violent crime, with the possibility of parole, violates "evolving standards of decency" simply because the defendant was thirteen years old at the time of the offense.

We hold that an enhanced sentence based upon a prior most serious **conviction** for a crime which was committed as a juvenile does not offend evolving standards of decency so as to constitute cruel and unusual punishment.

■ Finally, Standard asserts that allowing his juvenile plea to serve as the first "strike" to support a mandatory life sentence is fundamentally unfair and deprives him of due process. Essentially, Standard's claim is that he pleaded guilty to the armed robbery without knowledge that the conviction could later be used to trigger a mandatory life sentence upon commission of a subsequent offense. This claim is, in reality, a challenge to the voluntariness of Standard's armed robbery plea, such that it is a matter for post-conviction relief which is not properly before this Court. *State v. McKinney*, 278 S.C. 107, 292 S.E.2d 598 (1982) (unknowing or involuntary nature of guilty plea properly addressed on post-conviction relief, absent timely objection to plea).

■ Moreover, in *State v. Burdette*, 335 S.C. 34, 515 S.E.2d 525 (1999), we recognized that South Carolina does not require a defendant be informed, even in the indictment, that he was eligible upon conviction to be punished more severely on the basis of previous convictions in his record. Accordingly, we find no due process violation.

Standard's sentence of LWOP does not violate the Eighth Amendment.

**AFFIRMED.**

TOAL, C.J., MOORE and BURNETT, JJ., concur.
PLEICONES, J., concurring in result only.