## S02A0863. JOHNSON v. THE STATE.
(573 SE2d 362)

BENHAM, Justice.

At age 14, appellant Brandon Johnson was charged as an adult with aggravated sodomy, aggravated child molestation, and aggravated sexual battery in conjunction with his alleged acts involving a six-year-old girl who pretended to be asleep while appellant purportedly inserted his finger into her sex organ and put his tongue on her sex organ.[1] The jury convicted appellant of the three charges and the trial court imposed upon him the mandatory minimum sentences for each of the three crimes, ten years' imprisonment, with the three sentences to run concurrently.[2] On appeal, appellant contends that

---

[1] OCGA § 15-11-28 (b) (2) (A) states that "[t]he superior court shall have exclusive jurisdiction over the trial of any child 13 to 17 years of age who is alleged to have committed . . . (iv) Aggravated sodomy; (v) Aggravated child molestation; (vi) Aggravated sexual battery. . . ."

[2] OCGA § 17-10-6.1 (b) requires a trial court to sentence a person convicted of a "serious violent felony," as defined in subsection (a) of the statute, to
a mandatory minimum term of imprisonment of ten years and no portion of the mandatory minimum sentence imposed shall be suspended, stayed, probated, deferred, or withheld by the sentencing court and shall not be reduced by any form of pardon, parole, or commutation of sentence by the State Board of Pardons and Paroles.

the imposition of the mandatory minimum sentences required by OCGA § 17-10-6.1 (b) on him constitutes cruel and unusual punishment. He also urges error in the trial court's failure to give certain requested jury instructions, and alleges trial counsel rendered ineffective assistance of counsel.

1. The State presented evidence that, in late July and early August 2000, the six-year-old victim spent several nights at her aunt's home while the victim's mother underwent and recovered from surgery. During her visit, the child slept in a full-size bed with her four-year-old cousin, Allen Michael. A week after her visit, the victim told her mother that appellant, the nephew of the victim's uncle, had come into the bedroom where she was sleeping with her cousin, stuck his finger in her sex organ and then put his mouth there. She pretended to be asleep, peeking to watch what he was doing, and then kicked him. The victim testified about the events, and her mother and the district attorney's investigator trained to interview children each testified the victim told her the same story. The State presented evidence that, a year earlier, a complaint of fondling a four-year-old girl had been lodged against appellant in juvenile court.[3]

Evidence that appellant's finger penetrated the sexual organ of the victim was sufficient for the jury to find beyond a reasonable doubt that appellant committed an act of aggravated sexual battery. "A person commits the offense of aggravated sexual battery when he intentionally penetrates with a foreign object the sexual organ or anus of another person without the consent of that person." OCGA § 16-6-22.2 (b). "Foreign object" is statutorily defined as "any article or instrument other than the sexual organ of a person" (OCGA § 16-6-22.2 (a)), and a finger constitutes a "foreign object" for purposes of this crime. *Burke v. State*, 208 Ga. App. 446 (1) (430 SE2d 816) (1993). The evidence that appellant's mouth and the sex organ of the six-year-old victim came in contact with each other was sufficient evidence to authorize the jury to find appellant guilty beyond a reasonable doubt of aggravated sodomy. OCGA § 16-6-2 (a) defines aggravated sodomy as, among other things, "sodomy with a person who is less than ten years of age." There was sufficient evidence for the jury to find beyond a reasonable doubt that appellant committed an act of aggravated child molestation. OCGA § 16-6-4 (c) (offense occurs when a person "commits an offense of child molestation which act . . . involves an act of sodomy."). However, since the single act of sodomy involving the child was necessary to prove aggravated child

---

Each of the three crimes of which appellant was convicted is statutorily defined as a "serious violent felony."

[3] The adjudication of delinquency and order of disposition were entered after the date of the commission of the offenses for which appellant was prosecuted in superior court.

molestation and aggravated sodomy, the two convictions merge and the defendant cannot be sentenced for both crimes. See *Heidler v. State*, 273 Ga. 54 (15) (537 SE2d 44) (2000). Accordingly, the trial court must vacate the conviction and sentence for one of the two crimes.

2. Citing a trio of decisions from the United States Supreme Court in which the Court found a violation of the Due Process Clause in South Carolina's practice of not informing the jury in the sentencing phase of a capital case in which a defendant's future dangerousness was an issue that the defendant would not be eligible for parole in the event the jury sentenced the defendant to life imprisonment (*Kelly v. South Carolina*, 534 U. S. 246 (122 SC 726, 151 LE2d 670) (2002), *Shafer v. South Carolina*, 532 U. S. 36 (121 SC 1263, 149 LE2d 178) (2001), and *Simmons v. South Carolina*, 512 U. S. 154 (114 SC 2187, 129 LE2d 133) (1994)), appellant asserts that his right to due process was violated when the trial court declined to permit the jury to be made aware that, if found guilty, appellant was required by law to be imprisoned for a minimum of ten years without any possibility of early release. The underlying principle of the South Carolina cases is the fact that the Due Process Clause does not allow a defendant to be executed on the basis of information, the defendant's supposed eligibility for parole, which the defendant had no opportunity to explain or deny to the sentencing jury. *Simmons v. South Carolina*, supra, 512 U. S. at 161. The case at bar is not a capital case and the jury is not a sentencing jury. The possible punishment a defendant faces is not relevant in the guilt phase of a trial where the question is whether each element of the alleged offense has been proved beyond a reasonable doubt. See *Simmons*, 512 U. S. at 163. " 'It is improper for the court to give any instruction to the jury concerning possible sentences in a felony case before the jury has determined the question of guilt or innocence. (Cits.)' [Cit.]" *Bellamy v. State*, 272 Ga. 157, 159 (4) (527 SE2d 867) (2000). Accordingly, the trial court did not err when it declined to inform the jury that, should he be found guilty, appellant faced a minimum sentence of ten years' imprisonment.

3. Appellant takes issue with the trial court's refusal to give his requested charge on the credibility of a child witness.[4] The trial court

---

[4] The requested charge read as follows:
In receiving such evidence, you must exercise caution in weighing the credibility or believability of the child. You should consider her age, whether she is capable of having a clear memory of the facts to which she testified or about which she told others, whether her story is consistent in detail as she told it to others, *whether the story has been suggested to her by others or through circumstances,* and any other matters which you, in your collective experience, believe would bear on the reliability of her statements.
With the omission of the italicized phrase, the charge was given in *Wright v. State*, 198 Ga.

gave the pattern jury charge on the credibility of witnesses (Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2nd ed.), Part 2E), which instructs the jurors that, when passing on witness credibility, they may consider all the facts and circumstances of a case, including a witness's manner of testifying, their intelligence, their interest or lack of interest, their means and opportunity for knowing the facts, the probability or improbability of their testimony. " 'It is not reversible error to fail to charge in the exact language requested when the charge given adequately covers the correct legal principles.' " *Parker v. State*, 270 Ga. 256, 258 (3) (507 SE2d 744) (1998).

4. Appellant contends trial counsel rendered ineffective assistance of counsel because he was unable to convince the child to admit to illegal conduct in order to enter a guilty plea to a child molestation charge,[5] and because he did not ensure the attendance at trial of the physician who examined the child victim. To prevail on the claim of ineffective assistance, appellant "must show that counsel's performance was deficient and that the deficient performance prejudiced him such that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. [Cit.]" *Mobley v. State*, 271 Ga. 577 (523 SE2d 9) (1999).

(a) After being provided informed legal advice, it is the defendant, not the attorney, who makes the ultimate decision about whether or not to plead guilty. *Morrison v. State*, 258 Ga. 683 (3) (373 SE2d 506) (1988). At the hearing on the motion for new trial, trial counsel testified that he and appellant discussed at length the risks of going to trial, including the evidence against him, the effect of evidence of the prior similar incident, the differences in the possible punishments, and the mandatory nature of the punishment should he be found guilty at trial. See *Fults v. State*, 274 Ga. 82 (6) (548 SE2d 315) (2001). Inasmuch as appellant has not established that trial counsel was deficient in his duty to provide informed legal advice, appellant has not proven the first prong of a claim of ineffective assistance of counsel. See *Mobley v. State*, supra.

(b) Appellant's contention concerning the missing witness is

---

App. 429 (2) (401 SE2d 619) (1991). We know of no case in which the charge has been approved.

[5] According to trial counsel's testimony, the child's guilty plea to one count of child molestation, made pursuant to *North Carolina v. Alford*, 400 U. S. 25 (91 SC 160, 27 LE2d 162) (1970) (no constitutional error in accepting a guilty plea despite the accused's claim of innocence where there is a strong evidence of guilt that negates the claim of innocence and provides a factual basis for the guilty plea, there is representation by competent counsel, and there is evidence the accused intelligently concluded he should plead guilty to the lesser offense rather than face trial for the greater offenses), was withdrawn because counsel believed it would not be accepted by the trial court since appellant maintained he had not committed the act.

based on trial counsel's failure to have an out-of-state material witness subpoena issued for the Tennessee pediatrician who conducted the physical examination of the child a week after the crimes purportedly occurred. At the motion for new trial hearing, trial counsel testified he believed the pediatrician was "a crucial witness for the defense" after reading the physician's handwritten report of his examination of the child and talking with the physician several times.[6] While trial counsel knew well in advance of trial that the State was not going to call the doctor and knew that the physician was concerned about the timing of the trial, counsel did not obtain the subpoena necessary to compel the doctor's attendance at trial. Appellant contends the physician's testimony, which appellant presumes would have been consistent with the written report, would have impugned the victim's credibility because the child, in a videotaped interview with the district attorney's investigator that was played for the jury, had indicated that no prior incidents had occurred. While such evidence has been ruled admissible to show someone other than the defendant caused the injury where there was an offer of proof concerning another incident of molestation of the victim not involving the defendant (*Lemacks v. State*, 207 Ga. App. 160 (427 SE2d 536) (1993)), no such proffer was made in the case at bar at the hearing on the motion for new trial. As a result, even assuming trial counsel's performance was deficient, appellant has failed to establish the prejudice necessary to prevail on the claim. *Duncan v. State*, 271 Ga. 704 (524 SE2d 209) (1999); *Hearst v. State*, 212 Ga. App. 492 (2) (441 SE2d 914) (1994).

5. Appellant contends his sentence violates the constitutional prohibition against cruel and unusual punishment. He concedes that the mandatory nature of the penalty does not per se render it cruel and unusual (*Ortiz v. State*, 266 Ga. 752 (2) (470 SE2d 874) (1996)), but that, as applied to him, imposition of the mandatory penalty constitutes cruel and unusual punishment. At a hearing on the subject, appellant presented the testimony of several detention officers at the youth detention facility where he had been incarcerated for the seven-month period since his arrest. The officers described appellant as a child who was well-behaved and respectful of authority, and one who had achieved the highest level of good behavior obtainable at the facility and had maintained that level for 32 consecutive five-day periods, an achievement not accomplished by any other student. The officers testified that appellant was attending school and they

---

[6] The report stated that the physical exam of the child indicated "prior irritation or sexual penetration. When questioned re prior penetration, child admitted several prior inciden[ts]." Through his conversation with the physician, counsel became aware of other allegations of abuse.

believed he could be rehabilitated with counseling. The professional therapist at the YDC testified that appellant was an "excellent candidate" for treatment and believed the outcome would be "excellent." She noted that the recidivism rate of juvenile sexual offenders was very low (2-8%) if they received appropriate multi-systemic treatment.

> Both the Georgia and the federal constitutions categorically prohibit inflicting cruel and unusual punishments. A punishment is cruel and unusual if it (1) makes no measurable contribution to accepted goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime. [Cits.] . . . [W]hether a . . . punishment is cruel and unusual is not a static concept, but instead changes in recognition of the evolving standards of decency that mark the progress of a maturing society. [Cits.]

(Punctuation omitted.) *Fleming v. Zant*, 259 Ga. 687, 689 (3) (386 SE2d 339) (1989). Legislative enactments constitute the clearest and most objective evidence of how contemporary society views a particular punishment. Id. As a result, the issue of punishment is generally one for the legislative branch, and legislative discretion is deferred to unless the sentence imposed shocks the conscience. *Lambeth v. State*, 257 Ga. 15 (354 SE2d 144) (1987).

In passing the 1994 "School Safety and Juvenile Justice Reform Act," which, among other things, provided that juvenile offenders who committed certain violent felonies were to be tried as adults and, upon conviction, be sentenced to the custody of the Department of Corrections, the General Assembly found that the safety of students and the citizens of Georgia would be enhanced. 1994 Ga. L. 1012, Sec. 2 (6). Juveniles have been tried as adults and sentenced to long periods of incarceration in Georgia. See, e.g., *Miller v. State*, 275 Ga. 730 (571 SE2d 788) (2002) (juvenile sentenced to life imprisonment for murder); *Griffin v. State*, 265 Ga. 552 (458 SE2d 813) (1995) (life imprisonment for murder); *Houston v. State*, 237 Ga. App. 878 (517 SE2d 357) (1999) (12 years' imprisonment for armed robbery and aggravated assault); *Taylor v. State*, 194 Ga. App. 871 (392 SE2d 57) (1990) (13-year-old sentenced to life imprisonment for aggravated child molestation, aggravated assault, and kidnapping with bodily injury). Nor is the legislative decision to impose adult sanctions on youthful offenders peculiar to Georgia. See *State v. Standard*, 351 S. C. 199 (569 SE2d 325, 329) (2002); *State v. Ira*, 132 N. M. 8 (43 P3d 359, 366) (2002); *State v. Green*, 348 N. C. 588, 608 (502 SE2d 819, 831) (1998); and cases cited therein. As a result, we are unable to say

that the societal consensus in Georgia or the United States opposes sentencing youthful offenders convicted of violent offenses to long terms of incarceration. Compare *Dawson v. State*, 274 Ga. 327 (1) (554 SE2d 137) (2001) (execution by electrocution cruel and unusual punishment); *Fleming v. Zant*, supra, 259 Ga. at 690 (execution of mentally retarded persons cruel and unusual punishment). Accordingly, we conclude that application of the mandatory minimum sentencing scheme to appellant does not violate the constitutional prohibition against the imposition of cruel and unusual punishment.

*Judgment affirmed in part and vacated in part, and case remanded with direction. All the Justices concur, except Hunstein, Carley, and Thompson, JJ., who concur in part and dissent in part.*

SEARS, Presiding Justice, concurring.

My research also leads me to conclude that the applicable mandatory minimum sentencing scheme at issue in this case does not violate the Eighth Amendment's limited prohibition against cruel and unusual punishment. Accordingly, I must concur in the majority opinion.

However, I urge our General Assembly to bear in mind that, when developing Georgia's juvenile justice system, we sought to treat children differently from adults because we recognized: (1) that children have not developed the problem-solving skills of adults;[7] (2) that children, unlike adults, do not readily foresee the long-term consequences of their actions; and (3) that children are much more amenable to rehabilitation, redemption and reintegration into society than are adults. Criminal sanctions must always be swift and sure, as well as humane and proportional to the gravity of the offense. But in our understandable zeal to tackle the tough social problem of juvenile crime, we must not forget these fundamental distinctions between childhood and adulthood.

CARLEY, Justice, concurring in part and dissenting in part.

I fully concur in Divisions 2, 3, 4, and 5 of the majority opinion. I also agree with the holdings in Division 1 that there was sufficient evidence to support the jury's guilty verdicts on the aggravated sexual battery and aggravated sodomy counts, and that the defendant cannot be sentenced for both aggravated child molestation and aggravated sodomy based on the same act. However, I do not agree that the latter two convictions simply merge or that the trial court may choose which one to vacate. Where an act of sodomy is committed against a victim under the age of ten, the only punishable offense is that of aggravated sodomy.

---

[7] See *Miller v. State*, 275 Ga. 730 (571 SE2d 788) (2002) (Benham, J., concurring).

The General Assembly recently chose to change the definition of aggravated sodomy so as to include an act which previously constituted aggravated child molestation. Ga. L. 2000, p. 1346, § 1; OCGA §§ 16-6-2 (a), 16-6-4 (c). Commission of sodomy against a child less than ten years old previously was an act of aggravated child molestation, but it is now an act of aggravated sodomy. By making this change, the legislature increased the maximum punishment for an act of sodomy on a victim under the age of ten to life imprisonment. OCGA §§ 16-6-2 (b), 16-6-4 (d) (1). The effect of this was to remove commission of sodomy against a child younger than ten from the definition of "aggravated child molestation" and to redefine "aggravated sodomy" so as to include that specific act.

It is well settled that "a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent. [Cit.]" *Vines v. State*, 269 Ga. 438, 440 (499 SE2d 630) (1998). We have applied this principle both to sentencing and to classification of crimes. *Mann v. State*, 273 Ga. 366, 368 (1) (541 SE2d 645) (2001); *Vines v. State*, supra. See also *Norwood v. State*, 249 Ga. App. 507, 509 (2) (548 SE2d 478) (2001); *Chastain v. State*, 231 Ga. App. 225, 228 (4) (498 SE2d 792) (1998) (" 'where a crime is penalized by a special law, the general provisions of the penal code are not applicable.' [Cits.]"); *Stovall v. State*, 216 Ga. App. 138, 142 (7) (453 SE2d 110) (1995) (the more specific sentencing statute prevailed despite providing a greater punishment). The facts proved in this case clearly show that Johnson committed an act proscribed by the recently amended and more specific code section, the violation of which may carry a greater punishment. Therefore, he was not subject to conviction under the more general aggravated child molestation code section, "there being a specific section covering his offense." *Sharp v. State*, 7 Ga. App. 605, 606 (67 SE 699) (1910).

> [W]here there is a specific statute covering the offense, and under which the defendant is [subject to a greater punishment], he should be indicted under that specific statute, rather than under the general section of the . . . Code. . . .

*Sharp v. State*, supra. The aggravated sodomy statute, insofar as sodomy against a ten-year-old victim is concerned, preempts OCGA § 16-6-4 (c), and it would be improper to convict appellant of aggravated child molestation. See *Harden v. State*, 184 Ga. App. 371, 372 (361 SE2d 696) (1987). If one who commits an act of sodomy against a child under the age of ten were still to be punishable for aggravated child molestation, no amendment to the aggravated sodomy statute would have been required, because the offense would be within the general statute applicable to all cases of aggravated child molesta-

tion. See *Stone v. State*, 118 Ga. 705, 709 (2) (45 SE 630) (1903); *Harden v. State*, supra.

The primary rule of statutory construction is to construe statutes so as to effectuate the legislative intent. *Mikell v. State*, 270 Ga. 467, 468 (510 SE2d 523) (1999). The General Assembly was authorized to make a policy determination that, because committing sodomy against a victim under ten years old is a more egregious act than the generally defined offense of aggravated child molestation, that act should be redefined as aggravated sodomy, with its potentially more severe punishment, whereas other acts, including sodomy against a child who is between 10 and 16 years of age, should remain within the definition of aggravated child molestation, with its less severe maximum punishment. See *Vines v. State*, supra at 440. Indeed, the recent specific amendment to OCGA § 16-6-2 (a) demonstrates that very intent. The uncodified preamble to that amendment states that its purpose is "to provide that sodomy with a person who is less than ten years of age *shall constitute* the offense of aggravated sodomy. . . ." (Emphasis supplied.) Ga. L. 2000, supra at p. 1346. There is no indication that the General Assembly intended that such an act shall also remain punishable as aggravated child molestation.

Accordingly, the judgment of the trial court should be affirmed as to aggravated sexual battery and aggravated sodomy, but vacated as to aggravated child molestation. Therefore, I dissent to today's judgment to the extent that it authorizes the trial court to decide which conviction should be vacated.

I am authorized to state that Justice Hunstein and Justice Thompson join in this opinion.

DECIDED DECEMBER 13, 2002.

*Todd M. Johnson*, for appellant.

*Kermit N. McManus, District Attorney, Stephen E. Spencer, Andrew B. Margolis, Assistant District Attorneys*, for appellee.