### 73323. BASSETT v. THE STATE.
(353 SE2d 48)

POPE, Judge.

Joseph Michael Bassett brings this appeal from his conviction of trafficking in cocaine. His sole enumeration of error challenges the denial of his motion to suppress evidence. *Held*:

Although the evidence presented at the hearing on the motion to suppress was not without conflict, the trial court was authorized to find that on June 6, 1985 two local law enforcement officers were assigned to duty with the Drug Enforcement Administration at Atlanta International Airport. They were assigned the task of intercepting drug couriers transiting the airport with drugs. At approximately 11:10 a.m. a Delta Air Lines flight from Miami, Florida arrived and appellant exited therefrom. The officers were observing the passengers from this flight because it originated in the most significant source area for the distribution of the drug cocaine. As appellant came off the airplane, he separated himself from the other passengers and without obtaining continuing flight information, he waited as if looking for another passenger. He walked up the concourse, looked over his shoulder, stopped, returned to the gate for a brief period, and started walking back up the concourse, again looking over his shoulder and, at one point, turning completely around and walking backward up the concourse. At his departure gate, he met briefly with his co-defendant and then separated. This activity was consistent with two people traveling together but trying to conceal the fact and is also a common characteristic of two drug couriers traveling with contraband from a drug source city.

At the departure gate appellant talked to the gate agent to assure himself he was at the correct gate. The officers then had an opportunity to observe that he had no evidence of baggage claim checks at-

tached to his ticket envelope. His reservation record was brought up on the computer screen and showed that he was traveling under the name Tom Schmidt and that he had flown from Toledo, Ohio the day before and had arrived in Miami at approximately 5:05 p.m. There was no Miami local contact telephone number left with the airline. Appellant had stayed in Miami only overnight and at approximately 11:10 a.m. was in Atlanta en route back to Toledo. The reservation record confirmed what the officers had suspected when they observed that appellant was carrying only a small nylon tote bag and had no checked baggage for the rather lengthy trip from Miami to Toledo. His stay had been only a brief one in a drug source city. All of these factors are consistent with drug courier activities.

The officers decided to interview appellant. They were dressed casually and displayed no weapons. All conversations with appellant were in a normal conversational tone and were not coercive. One officer sat next to appellant, introduced himself as a police officer, showed his credentials, and asked to speak with appellant. Appellant consented to the officer's request to see his ticket; the ticket confirmed the reservation record. While holding the ticket, the officer asked appellant his name. Appellant stammered as though he could not recall his name but shortly said Tom Schmidt. The officer's experience indicated to him that appellant's difficulty in remembering his name was evidence that he was traveling under a false name. Drug couriers who make quick trips to drug source cities with little or no baggage and with no local contact often travel under false names. When asked if he was traveling for business or pleasure, appellant again hesitated before answering for pleasure. Appellant's negative response when asked if he had any type of identification with him enhanced the officer's suspicion that appellant was traveling under a false name. Appellant stated that he had absolutely no identification with him, not even a credit card or a piece of paper with his name on it. It is also common for drug couriers traveling under a false name to claim that they do not have any type of identification.

Based upon all the above circumstances, one of the officers informed appellant that he and the other officer were narcotics officers looking for drugs being carried through the airport and asked if he would consent to a search of his person and his bag either in the gate area or a more private place up the concourse. Appellant freely consented to a search of his person, but told the officers that the bag was not his. Appellant chose to have the search conducted in a private area. As they were leaving the gate area, appellant left the bag. When asked about the bag, he stated that it was not his bag and that he had just carried it off the airplane for someone else. One of the officers picked up the bag and carried it with him to an office down the concourse where appellant was to be searched. Once inside the room one

of the officers read to appellant a card informing him of his rights concerning consent searches and his right to consult with an attorney. When asked if it was still all right to search him and his possessions, appellant stated that the bag was not his and the officers could search it if they wanted. The officers did and discovered more than 400 grams of cocaine and appellant's driver's license. Appellant was then placed under arrest.

The facts disclose a valid police-citizen encounter followed by appellant's consent to a search of his person, but not the tote bag in his possession. See *Conley v. State*, 180 Ga. App. 662 (350 SE2d 45) (1986), and cits. On the basis of the foregoing facts, the trial court found that appellant had a legitimate expectation of privacy in the tote bag up until the time the officers requested to search him. At that point appellant abandoned the bag, disclaiming any interest in it. The court concluded that appellant no longer retained a legitimate expectation of privacy with regard to the tote bag at the time of the search and thus had no standing to challenge same. We concur in this analysis.

"Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be considered. Police pursuit or the existence of a police investigation does not of itself render abandonment involuntary. The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." (Citations omitted.) *United States v. Colbert*, 474 F2d 174, 176 (5th Cir. 1973). "The issue of abandonment is one of fact to be resolved by the trier of fact, and the finding of fact will not be disturbed on appeal if there is any evidence to support it." *Williams v. State*, 171 Ga. App. 546, 548 (320 SE2d 389) (1984).

The facts in this case show that appellant abandoned the tote bag before the search took place. In response to police questions, appellant disclaimed any interest in the bag and walked away from it. The police did not compel this action. Under these circumstances, appellant could entertain no legitimate expectation of privacy in the tote bag at the time of the search. See, e.g., *Williams v. State*, supra at (2); *Green v. State*, 127 Ga. App. 713 (194 SE2d 678) (1972); *United States v. Colbert*, supra. Compare *United States v. Beck*, 602 F2d 726 (5th Cir. 1979). Since the record supports the trial court's finding of abandonment, we find no error in the denial of appellant's motion to suppress.

*Judgment affirmed. McMurray, P. J., and Carley, J., concur.*

Decided January 8, 1987 —
Rehearing denied January 26, 1987 —

*Steven E. Lister, William M. Amos,* for appellant.
*Robert E. Keller, District Attorney, Clifford A. Sticher, Assistant District Attorney,* for appellee.