A04A0012. LEE v. THE STATE.
(600 SE2d 825)

SMITH, Chief Judge.

A Glynn County jury found Demetrius L. Lee guilty of armed robbery. As a result of his prior conviction for aggravated child molestation, the trial court sentenced Lee to serve a sentence of life without the possibility of parole. Thereafter, the trial court considered and denied Lee's motion for new trial. In this appeal, Lee challenges the sufficiency of evidence. He also asserts that a charging error requires reversal and that he should not have been sentenced under OCGA § 17-10-7 (b) (2). We find no error and affirm.

Viewed in the light most favorable to the verdict, the evidence shows that while using a pay phone in the parking lot of a shopping center, the victim was approached by two men, one of whom asked for change. When the victim returned to his vehicle, the same two men emerged from hiding, each brandishing a handgun. After the first man pointed a gun at the victim, the second gunman, later identified

as Lee, placed his gun against the victim's side. Warning that his gun was loaded, the first man said, "I don't want to hurt you. We just want what you got." Lee then rifled through the victim's pockets and took his wallet, money, and personal effects. Both men fled on bicycles. The victim returned to the grocery store to report the incident to Detective James Vaughn who was providing off-duty security there. Vaughn radioed a description of the perpetrators, and a manhunt ensued.

Shortly after the robbery, two men rode their bicycles up to a house where Diane Short lived. After leaving their bicycles in front of her house, they entered her house uninvited, one through a front window. Short saw them remove some money from a wallet then stuff the wallet and a gun inside a rip in a mattress. While the men were still inside her home, the police arrived. According to Sergeant Jesse Gibbs, this particular house had drawn his attention because the two bicycles in front of the house appeared to have been "dropped in a hurry." Gibbs estimated that the house was about ten blocks from the scene of the armed robbery. Upon inquiry, Short told Gibbs that the bicycles belonged to the "two guys in the house," and added, "I think they robbed somebody because they have a wallet and a gun." While they were talking, Gibbs saw one of the perpetrators, Antonio Brown, climbing out a front window and apprehended him. The other man, later determined to be Lee, managed to escape out the back of the house.

Short provided written consent for a search of her house. Between a mattress and box springs, officers found two guns, a brown leather wallet, and a pawn receipt indicating that the wallet belonged to the victim. Less than an hour after being robbed at gunpoint, the victim identified Brown as the first gunman as police detained Brown near Short's home.

Over the next few days, the victim saw the second gunman several times, wearing the same blue ball cap he had worn during the robbery. After ascertaining the man's name, the victim provided that information to Detective Vaughn. From a photo array created by Vaughn, the victim identified Lee as the man who had placed a gun against his side and had stolen his wallet and money. A few months later, Short also selected Lee's photograph from an array, but she was not as certain of her choice.

The victim identified Lee in court as the gunman who took his wallet and money. The victim identified the wallet recovered in the bedroom of Short's home as his and confirmed that a pawn shop ticket inside the wallet belonged to him. He identified a small handgun with a brown wooden handle as the gun used by Lee and said that he was missing $60 or $70.

1. Lee contends that the evidence was insufficient to support his conviction for armed robbery. He asserts that the State failed to

produce any scientific evidence linking him to the crime. He claims that Brown did not implicate him in the armed robbery and that Brown told police that he knew the second man involved in the armed robbery by the nickname of "Ips" or "I-p-s," but that no evidence showed that he was so known. Finally, Lee contends that the victim's identification of him from the photo array relied upon a photograph that the State conceded was of poor quality, and he points out that Short expressed uncertainty regarding her identification of him.

"The testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-4-8; *Grisson v. State*, 225 Ga. App. 816, 818 (484 SE2d 802) (1997). "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation omitted.) *Smith v. State*, 253 Ga. App. 504, 505 (559 SE2d 537) (2002).

Here, the victim testified that within days of the armed robbery, he saw the second gunman and learned his name. Later, the victim identified Lee from a photo array. At trial, the victim expressed his certainty that Lee was, in fact, the second robber. The victim also identified the small pistol found inside the nearby residence as the one used by Lee during the crime. This evidence clearly sufficed to establish the elements of armed robbery. See generally *Nicholson v. State*, 200 Ga. App. 413, 414 (1) (408 SE2d 487) (1991).

2. While instructing the jury, the trial court appears to have made an obvious misstatement, whether due to a slip of the tongue or a transcription error:

> If you do not believe that the defendant is guilty of the offense charged in the indictment or if you have reasonable doubt as to the defendant's guilt, then it would be your duty to acquit the defendant, and which the form of your verdict would be: We, the jury, find the defendant guilty [sic], and be signed and dated by your foreperson.

Lee contends that this error is presumptively prejudicial and that this court should not assume that "jurors of ordinary understanding clearly could not have been misled or confused by the subject instruction by the trial court."

This apparent misstatement, however, was only part of a much more extensive instruction on the jury's duties with respect to finding its verdict. Before making the misstatement, the trial court instructed the jury on the presumption of innocence and the burden of the State "to prove every material allegation of this indictment and every essential element of the crime charged beyond a reasonable

doubt."[1] The court also had explained the concept of "reasonable doubt" and advised the jury of its duty to acquit if the State failed to prove beyond a reasonable doubt the defendant's guilt or the identity of the person committing the crime. After charging the jury on these and other legal precepts, and after defining the crime of armed robbery, the trial court gave the charge complained of. The court immediately continued, "However, if you feel the state has proven its case beyond a reasonable doubt and you find the defendant guilty, then the form of your verdict would be: We, the jury, find the defendant guilty. It will be signed and dated by your foreperson."

A fair reading of the trial court's instruction on the form of the verdict indicates that the court presented the two possible verdict forms in the alternative, making it unlikely that the jury understood that a guilty verdict would be appropriate if it intended to acquit Lee. A mere verbal inaccuracy resulting from a slip of the tongue which does not clearly mislead or confuse the jury is not reversible error. *Williams v. State*, 267 Ga. 771, 773 (2) (a) (482 SE2d 288) (1997). In any event, having considered the charge as a whole, including the court's repeated instructions as to the State's burden to prove the elements of the crime beyond a reasonable doubt, we do not believe there is a reasonable possibility that the court's apparent slip of the tongue misled the jury as to the appropriate form of verdict should the jury find that the State did not satisfy its evidentiary burden. See *Burns v. State*, 246 Ga. App. 383, 384 (1) (540 SE2d 640) (2000).

3. Lee asserts that the trial court erred by considering his prior conviction because he committed that offense while only age 13. He complains that by imposing an enhanced sentence, the trial court treated him unfairly.

As the record demonstrates, the State afforded proper notice of its intent to introduce proof of Lee's prior convictions. Prior to trial, the prosecutor perfected the record to establish that Lee had been made aware of the sentence that he faced should he be convicted.[2] At sentencing, the State presented a copy of the notice form and a certified copy of Lee's guilty plea to three counts of aggravated child molestation and one count of terroristic threats. This evidence was admitted without objection.[3] In the prior case, Lee pled guilty and the

---

[1] Before the State commenced its case-in-chief, the trial court instructed the jury about the presumption of innocence, burden of proof, reasonable doubt, and the jury's obligation to acquit if doubt still remained.

[2] The assistant district attorney described the plea negotiations and stated that two different plea offers had been extended to Lee. The prosecutor noted that Lee, if convicted, faced a mandatory sentence of life without parole. Lee acknowledged that he understood this and expressed his desire to proceed with a trial.

[3] The State also introduced without objection a certified copy of Lee's misdemeanor conviction for criminal trespass wherein Lee entered a negotiated plea.

trial court imposed a felony sentence and directed Lee to serve ten years' probation, the first year to be served under "Intensive Probation Supervision upon release from Youth Detention Center in Savannah, Ga."

The State maintains that because Lee was adjudicated as an adult under the indictment in the prior case, his age at the time that he committed the crimes is irrelevant. We agree. Under OCGA § 16-3-1, the legislature made the age of 13 the age of criminal responsibility in this state. In enacting the Sentence Reform Act of 1994, the legislature mandated special sentencing treatment for certain serious violent crimes, including aggravated child molestation and armed robbery. OCGA §§ 17-10-6.1 (a); 17-10-7 (b) (1). In enacting the 1994 "School Safety and Juvenile Justice Reform Act," the legislature provided for juvenile offenders who committed certain violent felonies to be tried as adults and, upon conviction, to be sentenced to the custody of the Department of Corrections. *Johnson v. State*, 276 Ga. 57, 62 (573 SE2d 362) (2002). The legislative decision to impose adult sanctions upon youthful offenders is neither new nor unique to Georgia. Id. Plainly, the legislature did not elect to carve out an exception that would exempt youthful offenders from the sentencing provisions of OCGA § 17-10-7 (b) (2). "[T]he choice of sentence by the legislature is insulated from judicial review unless it is wholly irrational or so grossly disproportionate to the severity of the crime that it constitutes cruel and unusual punishment." (Citations and punctuation omitted.) *Ortiz v. State*, 266 Ga. 752, 753 (2) (a) (470 SE2d 874) (1996). In *Ortiz*, the Georgia Supreme Court upheld the constitutionality of the "two violent felonies" statute, OCGA § 17-10-7 (b) (2). Id. at 754 (2) (a). Because the State proved Lee had a prior felony conviction for aggravated child molestation, and there is no constitutional infirmity as to the sentencing statute at issue, it follows that the trial court did not err in sentencing Lee as a recidivist.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JUNE 15, 2004.

*Patrick C. Kaufman*, for appellant.
*Stephen D. Kelley, District Attorney, Charles K. Higgins, Assistant District Attorney*, for appellee.