A04A2329. BRANTLEY v. THE STATE.
(611 SE2d 71)

ADAMS, Judge.

Joseph Keith Brantley was convicted following a jury trial of one count of armed robbery. He now appeals from the trial court's denial of his motion for new trial. We affirm.

On May 4, 2001, at around 10:45 p.m., a lone employee of the Krispy Chic restaurant on Skidaway Island was in the front of the restaurant mopping the floor. All the other employees on duty at the time were in the back of the building. Two men entered the front of the restaurant with scarves covering part of their faces. One of the men was carrying a gun and demanded that the employee go to the cash register. As the men followed her to the cash register, one carried a bag and the other carried the gun. The employee did not know how to open the register, so the gunman told her to act as if she were ringing

up a meal and the drawer would open. As she opened the cash register, a third masked man entered the restaurant and remained standing by the door. The gunman grabbed the cash and all three men fled the restaurant.

The employee recognized one of the men as her fiancé's cousin, Eric Washington, who lived with her. While her manager was on the phone to police, the employee called home on her cell phone to see if Washington was there and to confirm what he was wearing when he left the house. The employee's brother testified at trial that earlier on the day of the robbery Washington and two other men were at the employee's apartment, where the brother was also living. He said that Washington had come into the apartment to get a hooded sweatshirt before leaving with the two other men.

When police arrived, the employee told police about Washington and gave them her address, which was a short distance from the restaurant. The employee also described the clothing the three men wore during the incident. She told them that one was wearing a blue hoodie; one was wearing a black hoodie and the one with the gun was wearing a camouflage, Army fatigue-style jacket. She also told the officers that one of the suspects had dreadlocks, and she gave the direction in which the suspects had run.

Upon hearing this information, two officers drove in an unmarked police car through the apartment complex where the employee lived because it was in the area where the employee said that the suspects had run. They saw three men in the parking lot standing near a Toyota. The officer said they were either putting things into the trunk of the car or taking them out. One of these men was later identified as Washington. One of the other two men had dreadlocks and was in the process of putting on a red shirt. When an officer stepped out of his car and asked to see the man's hands, the man with dreadlocks ran away. During the subsequent foot chase, the man took off the red shirt and threw it to the ground. The officer eventually caught the man and put him in handcuffs. During a subsequent search of the Toyota, police found, among other items, a black hooded sweatshirt, a blue hooded sweatshirt, camouflage clothing, three bandannas, a gun on the front passenger floor board, and a bag with money inside on the driver's floor board.

A few minutes after the men's arrest, the police brought two of them to the window of the restaurant for the employee to identify. The police told her that these two men had been arrested along with Washington. The employee immediately noticed that neither man was wearing the same clothes he had on during the robbery. The first man the police showed the employee had dreadlocks. The employee testified that during the robbery she could see dreadlocks hanging from the hood of the camouflage jacket worn by the gunman. The

employee identified this man as the gunman in the robbery, and she identified the second man as the one who held the bag during the robbery. Brantley was identified at trial as the man with the dreadlocks. The second man was later identified as Timothy Lewis. Lewis subsequently gave a videotaped statement to police, confessing to the crime and implicating Brantley. He also testified at Brantley's trial that Brantley had been the gunman who took the cash from the register drawer.

Brantley put several witnesses on during the defense case, and he testified himself, denying any involvement in the crime.

1. Brantley enumerates as error that he received ineffective assistance of trial counsel because his trial attorney failed to reserve objections to the jury charge. He also asserts, without elaboration, that his trial counsel failed to file any requests to charge, to file a motion to suppress the out-of-court identification, or to provide him with discovery.

To establish ineffective assistance of counsel, Brantley must prove that his trial counsel's performance was deficient and that this deficient performance so prejudiced his defense that there was a reasonable probability that the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). We will uphold the trial court's determination as to counsel's effectiveness unless it is clearly erroneous. *Graham v. State*, 269 Ga. App. 590, 594 (4) (604 SE2d 651) (2004).

Brantley argues that his trial attorney's performance was deficient in failing to preserve objections to the jury instructions because he asserts that the jury charge was defective in several respects. He contends that the trial judge misstated the law when he charged:

> Ladies and gentlemen, you are instructed that when a defendant does testify on his own behalf, understanding that he does not have to testify and the state has the burden of proving his guilt beyond a reasonable doubt, you shall not disregard his testimony merely because he is accused of a crime. That when he does so testify, he at once becomes the same as any other witness and his credibility is to be tested by and subjected to the same tests as are legally applied to any other witness. And in determining the degree of credibility that shall be accorded to this witness's or his testimony, **you shall take into consideration and you may take into consideration** the fact that he is interested in the result of the prosecution as well as his demeanor and conduct upon the witness stand.

(Emphasis supplied.) Brantley argues that this charge was confusing

and misled the jury by instructing that they must take into account his interest in the outcome of the case when considering his testimony. Brantley also asserts that his trial counsel should have requested jury charges on alibi and mere association.

It is a "fundamental rule that jury instructions must be considered as a whole in determining whether the charge contained error." (Citation and punctuation omitted.) *James v. State,* 268 Ga. App. 851, 853 (1) (602 SE2d 854) (2004). Here, the court fully instructed the jury regarding the presumption of innocence and the State's burden to prove the elements of the crime beyond a reasonable doubt. The trial court also charged that it was up to the jury to determine credibility and that in making this determination the jury may consider any witness's interest or lack of interest in the case.

Although the cited portion of the charge was not a precise recitation of the law, the record reflects that it was simply a slip of the tongue. The written copy of the charge, from which the judge presumably read, does not contain the language "shall take into consideration," but reads only that the jury *may* take the defendant's interest in the case into consideration. We find that when the charge is viewed as a whole, there is no reasonable possibility that the charge as given misled the jury. "A mere verbal inaccuracy resulting from a slip of the tongue which does not clearly mislead or confuse the jury is not reversible error. [Cit.]" *Lee v. State,* 267 Ga. App. 834, 837 (2) (600 SE2d 825) (2004).

Further, at the hearing on the motion for new trial, Brantley's trial counsel was asked why he failed to request a charge regarding alibi and mere association. He testified that he believed that the pattern charge on alibi was one-sided in favor of the State and he was "not sure that he wanted the Court to tell the jury what the parameters of the alibi defense were." He also testified that he did not believe that a charge on mere association was necessary at the time, and could not definitively state whether such a charge would have made a difference at the trial.

We find that Brantley failed to establish that his trial attorney's representation was deficient by failing to request these charges. The decision whether to request a particular jury charge falls within the realm of trial tactics and strategy. *Berry v. State,* 262 Ga. App. 375, 376 (2) (a) (585 SE2d 679) (2003). "Trial tactics, however mistaken they may appear with hindsight, are almost never adequate grounds for finding trial counsel to have been ineffective so as to overturn a conviction." *Robertson v. State,* 245 Ga. App. 649, 652 (2) (538 SE2d 755) (2000). "They provide no grounds for reversal unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them." (Punctuation and footnote omitted.) *Berry v. State,* 262 Ga. App. at 376 (2) (a). Brantley has failed to

establish that his trial attorney's decision not to request these jury charges was patently unreasonable.

And as Brantley did not present any argument as to why the other alleged failures by his trial counsel rendered the attorney's representation ineffective, we find that he has failed to meet the necessary burden under *Strickland v. Washington.* Accordingly, the trial court's denial of the motion for new trial on this ground was not clearly erroneous.

2. Brantley next asserts that his trial counsel was ineffective in failing to properly preserve for appellate review the trial court's denial of his motion for mistrial. He asserts that the denial of a mistrial should have been properly preserved because the record indicates that the jury deliberated in the absence of one juror, who was ill, in violation of the trial judge's direction that no deliberations occur unless all 12 jurors were present.

Brantley's trial attorney moved for a mistrial after the jury reported that it was deadlocked and that one of the jurors was sick with a migraine headache and had been in the bathroom for about 20 minutes. The foreman reported that the juror was unable to participate any longer, but there is no clear evidence that the jury continued to deliberate in the juror's absence. The trial court replaced the ailing juror with an alternate and instructed the jury to continue deliberating. The jury reached a verdict, with the alternate, when the trial reconvened on the next day of court.

Although Brantley argues on appeal that his motion for mistrial was based upon the jury's continuing deliberations without the participation of one juror, his counsel's stated basis for the motion was the jury's report that it was deadlocked. Brantley's counsel was concerned that the jury would be sent home over the weekend without reaching a decision. Because Brantley does not argue that his trial counsel was ineffective for failing to preserve this issue for our review, we do not address this ground.

And because Brantley's counsel did not argue as a basis for the mistrial that the jury had improperly deliberated with less than 12 jurors present, he cannot be faulted for failing to preserve appellate review of this issue. To the extent that Brantley's argument can be interpreted as contending that his trial counsel was ineffective in failing to move for a mistrial on this ground, we find no merit to such an assertion. Brantley failed to establish on the record that the jury actually deliberated with only 11 jurors and thus cannot prove that such a motion would have been successful. A trial attorney's failure to make a meritless or futile motion does not provide a basis for finding that the defendant received ineffective assistance of counsel. *Davis v. State*, 267 Ga. App. 245, 246 (2) (599 SE2d 237) (2004).

Accordingly, we find no clear error in the trial court's denial of Brantley's motion for new trial.

*Judgment affirmed. Ruffin, C. J., and Bernes, J., concur.*

DECIDED FEBRUARY 21, 2005.

*Darden, Burns & Harris, Richard M. Darden,* for appellant.

*Spencer Lawton, Jr., District Attorney, Larry Chisolm, Assistant District Attorney,* for appellee.

