## A08A1903. DRIGGERS v. THE STATE.

(673 SE2d 95)

BERNES, Judge.

This case arises out of allegations by a minor male child that his mother and her boyfriend forced the child to engage in sexual acts with them. The jury convicted the boyfriend, Billy Driggers, of aggravated child molestation, child molestation, aggravated sodomy, furnishing harmful material to a minor, and two counts of cruelty to children.[1] The trial court denied Driggers's amended motion for new trial. On appeal, Driggers contends that there was insufficient evidence to convict him of aggravated sodomy, and that the trial court erred by denying his motion to suppress and by allowing the child victim's psychologist to remain in the courtroom when the victim testified. He further contends that his trial counsel provided ineffective assistance in several respects and that his sentence for aggravated child molestation violated his equal protection and due process rights. For the reasons discussed below, we affirm.

On appeal from a criminal conviction, we construe the evidence in the light most favorable to the prosecution, and we defer to the jury's assessment of the weight and credibility of the testimony and documentary evidence. *Walker v. State*, 282 Ga. 406 (651 SE2d 12) (2007). So viewed, the evidence showed that in July 2001, the victim's mother moved in with Driggers. They lived together rent-free in a small outbuilding owned by Driggers's mother and step-father, Gloria and George Lacey. The outbuilding was supplied electricity and phone service from the Laceys' home, which was located on the same property, and the outbuilding did not have an address separate from the Laceys' home.

Shortly after the victim's mother and Driggers moved in together, the twelve-year old victim came to live with them. From July 2001 until a few weeks before Christmas 2001, Driggers repeatedly sexually abused the victim, threatening to shoot and kill him if he did not engage in the requested sexual acts. On multiple occasions, Driggers made the victim smoke marijuana, snort Ritalin, and wear dresses, makeup, and panty hose with the crotch area cut out. Driggers likewise would wear dresses, panty hose, and women's underwear. Driggers then would touch the victim's penis with his hands, perform oral sex on the victim, and require the victim to perform oral sex on him, among other sexual acts. This sexual abuse occurred in the presence of the victim's mother. During these

---

[1] At the time of Driggers's trial, the mother had not yet been tried for her alleged role in the sexual abuse.

encounters, the victim's mother and Driggers also forced the victim to have oral, anal, and vaginal sex with his mother. Additionally, Driggers made the victim watch pornographic movies while the sexual acts were being performed.

A few weeks before Christmas 2001, the victim called the police after his mother and Driggers had a violent physical altercation. Although the responding police did not make an arrest at that time, the Franklin County Department of Family and Children Services ("DFCS") opened an investigation. In light of the reported domestic violence, the victim was placed in the custody of other family members. A DFCS investigator subsequently conducted a recorded interview with the victim, who disclosed the sexual abuse that had occurred. A transcript of the interview was provided to an investigator with the Franklin County Sheriff's Department.

In late December 2001, after the victim was removed from the home, the victim's mother and Driggers moved from the outbuilding in Franklin County to Florida, leaving behind many of their personal belongings in the outbuilding. In January 2002, the Laceys sent Driggers a letter advising that neither he nor the victim's mother were to return to the outbuilding. The Laceys cut off the water to the outbuilding and did not refill the empty propane tank. In March 2002, the Laceys sent Driggers a second letter advising him that the outbuilding was going to be demolished and that he had 30 days to remove his belongings from the building. Driggers did not respond to either letter and never returned to the outbuilding for his belongings. As a result, the Laceys entered the outbuilding and began bagging up trash to discard and boxing up some of the items to store in preparation for the demolition.

On April 1, 2002, the Laceys contacted the investigator with the Franklin County Sheriff's Department in charge of investigating the molestation allegations. The Laceys informed the investigator that they intended to demolish the outbuilding that day but that there was trash and other items still inside that he might want to look through as part of his investigation. Later that day, the investigator proceeded to the outbuilding, where he met with the Laceys. They informed the investigator that they owned the outbuilding, that the outbuilding was now vacant, and that they believed that Driggers had abandoned the personal property that remained in the building. After speaking with the Laceys, the investigator received their written consent to search the outbuilding and its contents. During the ensuing search, the investigator seized several items, including medicine bottles for Ritalin prescribed to Driggers and two videotape covers for pornographic movies.

A few days later, George Lacey contacted the investigator and advised that he had found a locked electrical box in the outbuilding that he had decided to break open. The box contained a black plastic bag, inside of which were several items of "unique female clothing." George Lacey gave the investigator the clothing items, which included several pairs of ladies underwear and panty hose with the crotch area cut out of them.

Driggers was arrested, indicted, tried, and convicted by a jury of multiple offenses relating to the alleged sexual abuse. At trial, the victim and his mother testified regarding the abuse, and the state published for the jury the recorded interview of the victim conducted by the DFCS investigator. Among other witnesses and documentary evidence, the state introduced the items seized from the outbuilding by the investigator and the clothing items found by George Lacey.

1. Sodomy is defined as "any sexual act involving the sex organs of one person and the mouth or anus of another." OCGA § 16-6-2 (a) (1). Aggravated sodomy is an act of simple sodomy with the additional element of the sodomy being committed "with force and against the will of the other person." OCGA § 16-6-2 (a) (2). In the present case, the indictment alleged that Driggers committed aggravated sodomy by forcing the victim against his will to perform oral sodomy upon Driggers.

Driggers argues that the evidence presented at trial was legally insufficient to convict him of aggravated sodomy as alleged in the indictment. According to Driggers, the only evidence of the victim performing oral sodomy upon him came from the uncorroborated testimony of the victim's mother, who was an accomplice to the sexual abuse. We disagree.

It is true that "in order to sustain a felony conviction based upon the testimony of an accomplice, there must be independent corroborating evidence which connects the accused to the crime." *Edmond v. State*, 267 Ga. 285, 287 (2) (476 SE2d 731) (1996). See OCGA § 24-4-8. Such corroborating evidence, however, can be slight and may consist entirely of "evidence of an accused's conduct before and after the crime that infers he participated therein," *Edmond*, 267 Ga. at 287 (2), including independent evidence of other crimes or injuries inflicted upon the victim by the defendant. See *Givens v. State*, 273 Ga. 818, 820-821 (1) (546 SE2d 509) (2001) (evidence of prior difficulties between victim and defendant sufficiently corroborated accomplice's testimony); *Jackson v. State*, 178 Ga. App. 378 (343 SE2d 122) (1986) (evidence that defendant had beaten the victim on other occasions sufficiently corroborated accomplice's testimony). Here, the victim testified to other acts of sexual abuse committed

upon him by Driggers on multiple occasions. This testimony was sufficient to corroborate the testimony of the victim's mother regarding the oral sodomy. See id.

Driggers also argues that there was insufficient evidence to prove the element of force. His argument is without merit. Only a minimal amount of evidence is necessary to prove that an act of sodomy involving a child was done with force and against the child's will, and such evidence can consist of "threats of death or physical bodily harm, or mental coercion, such as intimidation." (Citation and punctuation omitted.) *Brewer v. State*, 271 Ga. 605, 607 (523 SE2d 18) (1999). The victim testified that Driggers kept multiple guns around the outbuilding where they lived, and that Driggers repeatedly threatened to shoot and kill him if he did not engage in requested sexual acts. This testimony was sufficient to prove that the victim was forced to perform oral sodomy upon Driggers against his will. See *Smith v. State*, 294 Ga. App. 692, 696 (1) (a) (670 SE2d 191) (2008); *Weldon v. State*, 270 Ga. App. 574, 575-576 (607 SE2d 175) (2004).

For these reasons, we conclude that the evidence, when viewed in the light most favorable to the prosecution, authorized a rational trier of fact to have found the essential elements of aggravated sodomy beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307, 319 (II) (B) (99 SC 2781, 61 LE2d 560) (1979). See OCGA § 16-6-2 (a) (2). The trial court, therefore, properly denied Driggers's motion for new trial on this ground.

2. Driggers filed a motion to suppress seeking to exclude from trial the items that the investigator seized from the outbuilding after the Laceys consented to the search of the building and its contents.[2] Following a suppression hearing, the trial court found that at the time the investigator conducted the search, Driggers had abandoned any ownership or possessory interest he had in the outbuilding and its contents, and, therefore, had no basis for challenging the consent to search. Driggers enumerates as error the denial of his motion to suppress. We find no grounds for reversal.

A defendant who abandons seized property lacks standing to challenge the validity of the search and seizure. *Thomas v. State*, 274 Ga. 156, 159 (3) (549 SE2d 359) (2001).

---

[2] We note that the clothing items that George Lacey later found and voluntarily turned over to the investigator were not subject to exclusion on Fourth Amendment grounds. "It is well established that no illegal search and seizure occurs when a private citizen independently discovers contraband or other evidence of illegal conduct and then brings it to the attention of law enforcement." *Johnson v. State*, 231 Ga. App. 823, 825 (3) (499 SE2d 145) (1998).

> Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. The issue is whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.

(Citation and punctuation omitted.) *Orman v. State*, 207 Ga. App. 671, 672 (1) (428 SE2d 813) (1993). The issue of abandonment is a question of fact to be resolved by the factfinder, and a finding of abandonment will not be reversed on appeal if there is any evidence to support it. *Bassett v. State*, 181 Ga. App. 597, 599 (353 SE2d 48) (1987). As part of our review, we may consider evidence submitted at the hearing on the suppression motion and at trial. *Woodard v. State*, 289 Ga. App. 643, 644 (1) (658 SE2d 129) (2008).

Viewed in this manner, the record reflects that at the time of the search, Driggers had been absent from the outbuilding for approximately three months, was living in Florida, and had made no efforts to retrieve his personal belongings from the outbuilding despite having been advised to do so by the Laceys in their March 2002 letter. Moreover, in their January 2002 letter, the Laceys had specifically notified Driggers that he was not to return to the outbuilding. The evidence further reflected that at the time of the search, the outbuilding no longer had running water or functioning heat and was about to be demolished. Nor was Driggers paying any rent or utilities on the outbuilding, and he had not entered into a lease agreement with the Laceys. Finally, the Laceys themselves told the investigator that the outbuilding was now vacant and that Driggers had abandoned the items left behind in the building.

These combined facts supported a finding of abandonment. See, e.g., *Thomas*, 274 Ga. at 159 (3) (abandonment properly found where defendants had left the premises and had been ordered to vacate by their landlord); *Gray v. State*, 260 Ga. App. 197, 201-202 (4) (581 SE2d 279) (2003) (defendant abandoned contents of bag seized from residence, where defendant left the residence after being informed that he was no longer welcome there and never retrieved the bag he had left behind); *Oliver v. State*, 161 Ga. App. 567, 568 (1) (b) (287 SE2d 698) (1982) (testimony of landlady that defendant had abandoned the premises indicated that defendant no longer had expectation of privacy in the premises at the time of the search). Accordingly, the trial court was entitled to find that Driggers had no expectation of privacy in the outbuilding and its contents by the time of the investigator's search, and, therefore, lacked standing to complain of the search or any evidence seized as a result. See id. The fact that

there was other, conflicting testimony presented at the suppression hearing that militated against a finding of abandonment does not change the outcome here because "the trial court, and not this Court, resolves issues of credibility and conflicting evidence" in granting or denying a motion to suppress. *Davis v. State*, 232 Ga. App. 450 (1) (501 SE2d 241) (1998).

Driggers emphasizes that the March 2002 letter sent to him by the Laceys gave him 30 days to retrieve his belongings from the outbuilding before it would be demolished, and he contends that the 30 days had not passed by the time of the investigator's search on April 1, 2002. Although the testimony established that the Laceys sent Driggers the letter in March 2002, the letter does not appear in the record, and the exact date of the letter was never established. Furthermore, March has 31 days; Gloria Lacey testified that she and her husband planned to demolish the outbuilding on April 1; and the Laceys told the investigator that they believed that the belongings had been abandoned as of that date. Construed in favor of the trial court's grant of the motion to suppress, see *Mitchell v. State*, 289 Ga. App. 55, 58 (1) (656 SE2d 145) (2007), this evidence was sufficient to support an inference that the 30 days had passed.

3. When the victim took the stand to testify at trial, the trial court cleared the courtroom of all spectators, with the exception of the victim's psychologist, who remained in the courtroom during the testimony.[3] Driggers maintains that by allowing the psychologist to stay in the courtroom, the trial court violated OCGA § 17-8-54, which provides:

> In the trial of any criminal case, when any person under the age of 16 is testifying concerning any sex offense, the court shall clear the courtroom of all persons except parties to the cause and their immediate families or guardians, attorneys and their secretaries, officers of the court, jurors, newspaper reporters or broadcasters, and court reporters.

According to Driggers, the trial court's failure to comply with the statute constitutes reversible error. We are unpersuaded.

"[T]he purpose of [OCGA § 17-8-54] is to protect the interest of the child witness, not the defendant, and failure to follow the statute does not violate the defendant's rights." *Turner v. State*, 245 Ga. App. 294, 297-298 (4) (e) (536 SE2d 814) (2000). See also *Donaldson v. State*, 255 Ga. App. 451, 452 (3) (565 SE2d 486) (2002). Moreover, there is no evidence in the record that the psychologist improperly

---

[3] The psychologist did not testify at trial.

influenced the testimony of the victim. Consequently, Driggers has failed to assert a valid basis for reversal. See id.; *Martin v. State*, 205 Ga. App. 591, 593 (5) (422 SE2d 876) (1992).

4. Driggers contends that he received ineffective assistance from his trial counsel in several respects.

> To show ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. The question of ineffectiveness is a mixed one of both law and fact: we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Robinson v. State*, 293 Ga. App. 238, 239 (2) (666 SE2d 615) (2008). See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

(a) The indictment used the victim's initials in place of the victim's name. Driggers contends that his trial counsel was ineffective for failing to file a timely special demurrer to the indictment on the ground that it did not specifically identify the victim.

We agree with Driggers that it was error for the indictment to omit the victim's name. See *Sellers v. State*, 263 Ga. App. 144, 146 (587 SE2d 276) (2003). However, to succeed on his ineffective assistance claim, Driggers was required to show that his trial counsel's failure to specially demur materially impacted his ability to present a defense, thereby creating a reasonable probability that counsel's deficiency changed the outcome of the case. See *Robbins v. State*, 290 Ga. App. 323, 329 (4) (a) (659 SE2d 628) (2008); *Berman v. State*, 279 Ga. App. 867, 871 (6) (632 SE2d 757) (2006). And it is apparent from the record that Driggers understood the charges against him and knew the identity of the alleged victim based on information gleaned from sources other than the indictment itself. Hence, Driggers has failed to show ineffective assistance because he cannot meet the prejudice prong of the test. See id. See also *Sellers*, 263 Ga. App. at 146.

(b) Count 3 of the indictment had the word "anal" crossed out with a pen and the word "oral" handwritten on top of it. The handwritten amendment to the indictment was not signed or dated. Driggers asserts that his trial counsel was ineffective for failing to demur in a timely manner to the indictment on the ground that it was unlawfully amended after the return of the grand jury indictment, presumably by the trial court or the prosecution.

An indictment cannot be materially amended after the grand jury has returned the indictment into court; any subsequent amend-

ment by the trial court or prosecution that materially affects the indictment is void and cannot serve as the basis for a conviction. See *Kesler v. State*, 249 Ga. 462, 468 (4) (291 SE2d 497) (1982); *Ingram v. State*, 211 Ga. App. 252, 253 (1) (438 SE2d 708) (1993). But to establish ineffective assistance, Driggers had "to show a reasonable probability that [a timely filed demurrer] would have succeeded." *Dade v. State*, 292 Ga. App. 897, 903 (666 SE2d 1) (2008). Cf. *Morris v. State*, 278 Ga. 710, 712 (2) (606 SE2d 258) (2004) (failure to file motion to suppress in-custody statements did not constitute ineffective assistance where defendant failed to present evidence that the statements were involuntary); *Brantley v. State*, 271 Ga. App. 733, 737 (2) (611 SE2d 71) (2005) (failure to move for a mistrial did not constitute ineffective assistance, where the defendant failed to present any evidence to show that there were grounds for a mistrial). No evidence was presented at the new trial hearing regarding when or by whom the amendment to the indictment was made. Thus, Driggers failed to present any evidence that the indictment was amended after the grand jury returned the indictment into court, and, consequently, failed to show that a timely filed demurrer in reasonable probability would have been successful. His ineffective assistance claim, therefore, must fail. See id.

(c) During the victim's taped interview with the DFCS investigator that was played at trial, the investigator asked the victim if Driggers had any distinguishing marks or characteristics on his body that would reflect that the victim had seen Driggers naked. The victim responded that he was "really not sure," but that Driggers may have had a scar on his stomach. Driggers maintains that his trial counsel was ineffective for failing to call him to the stand for demonstrative evidence purposes to show the jury that he had no scar on his stomach and that he had a visible deformity in his scrotum not mentioned by the victim.

Absent a proffer of the necessary evidence to support his claim, Driggers's claim of ineffective assistance of trial counsel cannot succeed. *Spear v. State*, 271 Ga. App. 845, 847 (2) (610 SE2d 642) (2005). There was no evidence presented at the new trial hearing that Driggers ever informed his trial counsel prior to or during the trial that he did not have a scar on his stomach or that he had a visible deformity in his scrotum. It follows that Driggers cannot establish that his trial counsel was deficient for failing to call him to the stand for demonstrative purposes. Cf. *Adkins v. State*, 280 Ga. 761, 762 (2) (a) (632 SE2d 650) (2006) (trial counsel was not ineffective for failing to call an alibi witness, where there was no evidence that the defendant ever informed counsel of the witness).

(d) At the new trial hearing, Driggers's son testified that during the summer of 2001, he often spent the night at his father's home

and shared a bedroom with the victim, but never witnessed any sexual abuse. Driggers asserts that his trial counsel was ineffective for failing to call Driggers's son as a defense witness at trial.

At the new trial hearing, Driggers testified that he informed his trial counsel that his son had stayed at the outbuilding during the time of the alleged sexual abuse and requested that his counsel speak with his son and have him testify at trial. In contrast, Driggers's trial counsel testified that he spoke with Driggers several times in preparation for trial and did not recall Driggers identifying to him any specific witnesses that were not subsequently called at trial. Trial counsel further testified that he did not recall Driggers ever informing him that his son had stayed at the outbuilding during the summer of 2001.

"It is within the trial court's discretion to resolve conflicting testimony between trial counsel and a defendant at a hearing on motion for new trial." *Adkins*, 280 Ga. at 762 (2) (a). Hence, the trial court was entitled to resolve the conflicting testimony and find that Driggers did not identify his son as a potential defense witness to his trial counsel or inform counsel that his son had stayed with him during a time period when some of the alleged sexual abuse was alleged to have occurred. Driggers thus has failed to show that his counsel was deficient in failing to call his son as a witness at trial.[4] See, e.g., id. at 762 (2) (a); *Escobar v. State*, 279 Ga. 727, 730 (5) (620 SE2d 812) (2005). See also *Salyers v. State*, 276 Ga. 568, 570 (5) (580 SE2d 240) (2003) (trial counsel not ineffective for failing to inform trial court that the defendant had a conflict with two potential jurors, where counsel testified that "he did not recall being told" of such a conflict by the defendant); *Moody v. State*, 273 Ga. 24, 28 (5) (537 SE2d 666) (2000) (trial counsel not ineffective for failing to call the defendant's mother as an alibi witness, where counsel testified that he "did not recall" either the mother or the defendant informing him where the defendant was on the night of the incident).

5. Driggers was convicted of aggravated child molestation based on evidence that he performed oral sex upon the victim with the intent of arousing his own sexual desires, and the trial court sentenced him to 30 years imprisonment based on this conviction. In his final enumeration of error, Driggers argues that the sentence

---

[4] Driggers claims that his trial counsel should have independently identified his son as a potential defense witness based on the victim's recorded interview with the DFCS investigator, which his counsel was able to review before trial. The victim never stated during the recorded interview, however, that Driggers's son was present during any of the sexual abuse. Rather, the victim told the investigator that the son normally stayed next door at the Laceys' home and thus never witnessed the abuse. As such, there was nothing in the recorded interview to have alerted trial counsel that Driggers's son either witnessed the sexual abuse or should have witnessed the abuse if it had occurred as alleged.

imposed by the trial court violated his equal protection and due process rights because child molestation involving an act of sodomy receives greater punishment than sexual crimes involving actual intercourse with the victim. Driggers's argument is controlled directly and adversely to him by *Widner v. State*, 280 Ga. 675, 676-677 (1) (631 SE2d 675) (2006), and *Odett v. State*, 273 Ga. 353, 354-355 (2) (541 SE2d 29) (2001).

*Judgment affirmed. Andrews, P. J., and Doyle, J., concur.*

DECIDED JANUARY 27, 2009 — 

*Harvey S. Wasserman*, for appellant.
*Robert W. Lavender, District Attorney*, for appellee.