**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**September 16, 2014**

# In the Court of Appeals of Georgia

A14A0796. YOUNG v. THE STATE.

RAY, Judge.

After a bench trial, Joshua Keith Young was convicted of hijacking a motor vehicle (OCGA § 16-5-44.1 (b)); armed robbery (OCGA § 16-8-41 (a)); two counts of aggravated assault (OCGA § 16-5-21 (a) (1), (2)); and three counts of possession of a firearm during the commission of crime (OCGA § 16-11-106 (b)).[1] He appeals from the denial of his motion for new trial contending that the trial court erred in failing to find that he received ineffective assistance of counsel. For the reasons that follow, we disagree and affirm.

Young does not contest the sufficiency of the evidence sustaining his conviction. Construed in favor of the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99

---

[1] Young was found not guilty of battery (OCGA § 16-5-23.1 (a)).

SCt 2781, 61 LE2d 560) (1979), the evidence shows that on August 19, 2011, the victim, Christopher Reyas, agreed to give Young and some other men, whom he did not know, a ride to someone's house. When Reyas drove into the driveway, one of the men whom he did not know pulled him out of the car, and several people beat him up. Reyas managed to get back into the car, and he, Young, and another man left the scene. During the ride, however, Young pulled Reyas' hair and punched and kicked him. Young pointed a gun at Reyas and demanded that he get out of the car. Fearing for his life, Reyas complied, and Young drove away in Reyes' car.

At trial, before hearing testimony, the trial judge questioned Young about whether he wanted a bench trial or a jury trial. Young stated that he wanted a bench trial and that he understood the rights he was waiving. The trial judge explained the difference between a bench trial and a jury trial, emphasized that Young had the right to a jury trial if he wanted one, and discussed possible sentencing parameters. Young then discussed the waiver with his counsel and signed a statement waiving his right to a jury trial. The waiver was read for the record. As Young concedes in his appellate brief, "The Court questioned the Defendant at length during the trial of the case, with regard to the waiver of the jury trial. The Court provided adequate time and insisted

2

the waiver be in writing. . . . The Court made sure that the waiver of Defendant's right to a jury trial was a knowing waiver."

Young contends that his counsel provided ineffective assistance.[2] To prevail on an ineffective assistance claim, Young

> was required to show both that his counsel's performance was professionally deficient and that but for counsel's unprofessional conduct, there is a reasonable probability [that] the outcome of the proceedings would have been different . . . The likelihood of a different result must be substantial, not just conceivable . . . [W]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012).

---

[2] Young's appellate brief does not comply with Court of Appeals Rule 25 (c) (1), which requires that the sequence of arguments in the brief follow the order of the enumeration of errors and be numbered accordingly. This rule "is a requirement which this Court imposes to ensure that all enumerations of error are addressed and to facilitate review of each enumeration. By failing to comply with the rule, [Young has] hindered this Court's review of [his] assertions[.]" *Brown v. Cooper*, 237 Ga. App. 348, 348 (514 SE2d 857) (1999). Further, a party may not expand his enumerations through argument or citation in his brief, and matters not enumerated as error will not be considered on appeal. *Brown v. State*, 310 Ga. App. 835, 835, n. 1 (714 SE2d 395) (2011).

1. Young argues that his trial counsel provided ineffective assistance by failing to provide him with "the requisite knowledge . . . to make an informed and intelligent waiver of his right to a jury trial."

At the hearing on Young's motion for new trial, his trial counsel testified that he explained the differences between a bench trial and a jury trial to his client, and that "Mr. Young had expressed to me that he did not want a Jury Trial, he wanted a Bench Trial . . . [because] he knows what his [criminal] record was and he didn't want other people to hear[.]" Young's trial counsel also said his client wanted a bench trial because he did not believe that the victim would come to court. "I told him at that point that . . . the alleged victim was in court, ready to go to court and did he still want to go with the [b]ench [t]rial or want to go with the [j]ury [t]rial. He still elected to go with the [b]ench [t]rial." Trial counsel testified that he advised Young to choose a jury trial "based on the charges, your record and things like that[,]" and also considering what Young apparently knew or believed about the trial judge. Trial counsel testified that he did not coerce Young into having a bench trial, but, rather, reiterated his belief that Young should have a jury trial "based on . . . the inconsistency in the alleged victim" about the event which could lead to an acquittal.

4

By contrast, Young testified at the motion for new trial hearing that his counsel told him he would get "an automatic not guilty verdict because [counsel] doesn't believe that [the] victim was going to show up[.]" Young stated that his counsel's theory was to "make the State believe that we wanted a jury trial, but when it came to it, to select a [b]ench [t]rial to get that not guilty verdict because he told me the victim was not in the courtroom." Young testified that he did not know the victim was at court until the victim was called to testify.

"When considering a claim of ineffective assistance, the trial court, not this Court, is the judge of witness credibility, and a trial court's denial of an ineffective assistance of counsel claim based on conflicting evidence is not clearly erroneous." (Citation and punctuation omitted.) *Wallin v. State*, 285 Ga. App. 377, 381 (646 SE2d 484) (2007). Here, the trial court "was authorized to believe trial counsel's testimony over that of [Young]." (Citation omitted.) *Thomas v. State*, 297 Ga. App. 416, 418 (1) (677 SE2d 433) (2009) (trial court authorized to believe testimony of counsel over that of defendant and his mother as to whether counsel discussed or adequately discussed the differences between a bench trial and a jury trial with defendant). Further, the trial court did not err in denying Young's motion for new trial, as Young failed to show deficient performance by counsel. See *Defrancisco v. State*, 289 Ga.

5

App. 115, 119 (1) (e) (656 SE2d 238) (2008) (rejecting contention that trial counsel failed to advise defendant of consequences of jury trial waiver where counsel testified that he discussed the issue with defendant several times); *Wroge v. State*, 278 Ga. App. 753, 755 (2) (629 SE2d 596) (2006) (rejecting ineffectiveness claim where counsel testified that he and defendant several times discussed advantages and disadvantages of jury trial and potential for juror bias in defendant's case).

2. Young also argues that his trial counsel failed to investigate the case adequately because he did not call certain witnesses whose testimony could have changed the outcome of the trial.

At the hearing on the motion for new trial, Young testified that he prepared a witness list at his attorney's request and told him about it two weeks before trial, but that trial counsel never retrieved it. Young said he gave the list to counsel on the day of trial, and that counsel tried to call some of the witnesses at the break but said it was "too late." However, Young also testified that trial counsel did not look at or take the witness list. At the motion for new trial, his handwritten witness list was tendered into evidence. Young's father testified that he "tried to give [trial counsel] some witnesses . . . but when I said something to him he just acted like he didn't want them." He testified that he had correct names and addresses for the witnesses, including a man

6

named "Srilai," but he did not offer any last name or bring that information to the motion for new trial hearing.

By contrast, Young's trial counsel testified that the only witness list he received was from the district attorney's office. He stated that he interviewed the victim and some of Young's family members who were not witnesses. He also spoke with Young's sister, Autumn Young, but only about the progress of the case. Trial counsel testified that he spoke with one of the individuals who was in the car with Young, but could not find a third person who was in the car. He did not identify either person.

At the motion for new trial hearing, Young called two people, including his sister, from the witness list that he said he had tried to give to his lawyer. He also called a man named Srilai Sripasert. Young testified that Sripasert was not on his list because he did not know that witness's full name.

Autumn Young testified that she saw several people, none of whom she named, beat up the victim. She testified that her brother tried to help the victim and then drove the victim away from the scene in the victim's car. Her brother later returned and told her that the victim "wanted out of the car, he wouldn't let me help him." She indicated that the victim had been left "on the side of the road[.]" She testified that

7

she was on methamphetamine at the time she witnessed the incident. She offered no testimony as to whether her brother took the victim's car with or without the victim's permission.

Another witness on the list, Christopher Bause, testified that on the night in question, he and Young tried to break up the fight, but so many people were hitting the victim that it was hard to identify who they were. He testified that Young drove away in the victim's car with the victim and Sripasert. He testified that Young was not beating up the victim, but offered no testimony as to whether the victim gave Young permission to drive or take his car.

Finally, Young called Sripasert. Sripasert testified that he saw the victim get beaten up, and that Young drove him and the victim away from the scene because the victim did not want to drive. He offered no testimony about whether the victim allowed Young to drive his car. He testified that Young and the victim were arguing and that Young stopped the car and told the victim to get out and drive, but that the victim got out and walked off, and Young drove away in the victim's car. He testified that he did not see Young threaten the victim or pull a gun on him.

From the bench, the trial court stated that after hearing the testimony from Young's witnesses, "none of the testimony presented today would have made a

reasonable probability of a different outcome." He also stated that Sripasert's testimony was cumulative of Young's.

As noted above, trial counsel testified that the only witness list he received was from the district attorney's office, and that he tried to find one of the witnesses who was in the car with Young, but was unable to do so. Even where, as here, a defendant presents testimony from witnesses whom he alleges trial counsel should have called, in the context of counsel's reason for not calling the witnesses, "the trial court was authorized to credit counsel's testimony regarding . . . witnesses whose names he was given." (Citation omitted.) *Woods v. State*, 275 Ga. 844, 847-848 (3) (a) (573 SE2d 394) (2002). Although Young's testimony, and that of his father, conflicted with trial counsel's testimony regarding the names of witnesses that were provided, "[i]t is within the trial court's discretion to resolve conflicting testimony between trial counsel and a defendant at a hearing on a motion for new trial." (Citation and punctuation omitted.) *Driggers v. State*, 295 Ga. App. 711, 718-719 (4) (d) (673 SE2d 95) (2009) (even though witness, who was not called to testify at trial, offered potentially exculpatory testimony at motion for new trial hearing, where defendant's testimony conflicted with counsel's over whether counsel had been given the witness's name, trial court was entitled to believe counsel and to find no

9

ineffectiveness). Here, the trial court was authorized to resolve the conflicting testimony and find that trial counsel was not given any witness list other than the one from the District Attorney's Office, and was unable to find one of the witnesses who was in the car. "[Young] thus has failed to show that his counsel was deficient in failing to call . . . [the] witness[es] at trial." (Citations omitted.) Id. at 719 (4) (d). Further, our Supreme Court has determined that an attorney cannot be found deficient "for failing to interview and call a . . . witness of whom [he] was not informed[.] ... Trial counsel cannot be held ineffective for failing to track down a witness whose whereabouts is unknown." (Citations and punctuation omitted.) *McIlwain v. State*, 287 Ga. 115, 118 (5) (694 SE2d 657) (2010). Counsel also testified, as noted above, that he interviewed one witness who was in the car with the victim. That witness was not called at trial, and Young elicited no testimony from counsel as to who that witness was or why counsel did not call the witness. Whether to call a witness is a matter of trial strategy and tactics, which we presume were reasonable. *Dechant v. State*, 294 Ga. App. 23, 26 (6) (b) (668 SE2d 501) (2008).

Having determined that counsel's performance was not deficient, we need not analyze the reasonable probability prong of the ineffective assistance test. *Works v. State*, 301 Ga. App. 108, 114 (7) (686 SE2d 863) (2009). Although the trial court

10

found that counsel was not ineffective because there was no reasonable probability of a different outcome, a ruling right for any reason will be affirmed. *Davis v. State*, 287 Ga. 414, 415 (696 SE2d 644) (2010).

*Judgment affirmed. Andrews, P. J., and McFadden, J., concur.*